CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
GREGORY J. CHARLES, #208583
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

HSR GENERAL ENGINEERING
CONTRACTORS INC,

           Debtor.

Case No. 10-58737

CHAPTER 11

**EMERGENCY MOTION FOR USE OF CASH COLLATERAL**

**Date:** August 27, 2010
**Time:** 3:00 p.m.
**Location:**
   United States Bankruptcy Court
   280 S. First St.
   San Jose, CA 95113

To The Honorable Charles Novack; The Office of The United States Trustee; Heritage Bank of Commerce ("Heritage"); Safeco Insurance Companies ("Safeco"); and all interested parties:

    HSR GENERAL ENGINEERING CONTRACTORS INC ("Debtor" or "HSR")., hereby moves the Court (the "Motion") for interim and final orders, pursuant to Bankruptcy Code Sections 361 and 363 and Federal Rule of Bankruptcy Procedure 4001(b), authorizing the Debtor to use cash collateral in which Heritage Bank of Commerce ("Heritage"); Safeco Insurance Companies ("Safeco")[1] (collectively, "Secured Creditors") assert a security interest, and to grant post-petition liens to the Secured Creditors as adequate protection therefore, as set forth below. The Debtor has attempted to discuss with Heritage an

---

[1] Various other creditors have security interests in Debtor's equipment or have filed/recorded preliminary lien notices.

appropriate stipulation, but thus far has not reached an agreement. Therefore, the Debtor asks the Court for an order authorizing Debtor to use cash collateral as set forth below, pending a final hearing.

**I. Introductory Statement.**

The Debtor filed its voluntary chapter 11 petition on August 23, 2010. The Debtor continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. 1107 (a) and 1108.

No committee of unsecured creditors has yet been appointed in this case, nor has any trustee or examiner.

As part of its initial filing Debtor filed various schedules listing its creditors. Debtor's Schedule D-Creditors Holding Secured Claims lists several creditors as secured, but focuses on two creditors claiming security interests which extends beyond various equipment. These two creditors are: Heritage Bank of Commerce ("Heritage") and Safeco Insurance Companies ("Safeco"). Debtor has two primary obligations to Heritage, including a primary loan with a balance of approximately $1,415,879.00 and a line of creditor with a balance of approximately $273,075.00. Debtor understands that Heritage has recorded UCC liens against Debtor's assets which extend beyond particular equipment. In addition, Safeco, which is one of Debtor's bonding companies, appears to have recorded a UCC lien against Debtor's assets which extends beyond particular equipment. Several creditors have filed/recorded preliminary notices. Debtor understands that Safeco's UCC lien was recorded less than ninety (90) days before the bankruptcy was commenced. Debtor understand various preliminary notices were filed/recorded against the Debtor less than ninety (90) days before the bankruptcy was commenced.

The Debtor has attempted but has been unsuccessful in an effort to reach agreement with Heritage on the use of cash collateral. Attached hereto is the interim operating budget. The projected income is more than sufficient to fund the budget without reducing the equity cushion for the creditors. Debtor believes that the creditors are adequately protected by the Debtor's assets and the equity cushion therein. An immediate need exists for the Debtor to

be able to use the cash collateral. Without such authority, the Debtor cannot pay operating costs, overhead costs, and employees, cannot purchase necessary materials, and cannot otherwise complete the existing projects. Consequently, the immediate ability to use the cash collateral is necessary to preserve value for all creditors. The continued operation of the Debtor's business will preserve the going concern value and the Debtor's ability to propose and confirm a plan of reorganization. The Debtor should have a reasonable opportunity to do so.

## II. Certification.

**The undersigned Certifying Professional has read the accompanying motion or stipulation and the Cash Collateral-Post Petition Financing Introductory Statement; to the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of the relief sought in the motion or stipulation are in conformity with the Court's Guidelines for Cash Collateral and Financing Motions and Stipulations except as set forth above. I understand and Financing Motions and Stipulations except as set forth above. I understand and have advised the debtor in possession or trustee that the court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statement.**

## III. Jurisdiction.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).The statutory predicate for the relief requested in Bankruptcy Code §§ 361 and 363, and Federal Rule of Bankruptcy Procedure 4001(b).

## IV. Background.

The Debtor filed its voluntary chapter 11 petition on August 23, 2010. The Meeting of Creditors has been scheduled for September 29, 2010. Debtor has submitted an application to appoint Keith Dorsa, Debtor's president, as Debtor's Responsible Individual. Debtor has also submitted an application to employ counsel. As part of its initial filing Debtor filed various schedules listing its creditors. Debtor intends to file additional schedules addressing its assets,

income, and expenses.

HSR is a San Jose based general engineering contractor specializing in environmental and heavy civil construction. HSR is licensed by the State of California and has a hazardous supplemental certificate. The principal of the firm possess more than 25 years of heavy civil and environmental construction experience. The company was established in 1988 and currently averages revenues of about 13 million dollars per year and employs in excess of 70 employees. The company is well insured and can currently bond projects up to 4 million dollars in size with an aggregate bonding limit of 6 million. All project related staff are 40 hour CERCLA/SARA trained. All field employees are covered by several labor unions including Operating Engineers, Laborers and Carpenters Locals.

HSR is a technologically advanced corporation. HSR uses state of the art HCSS estimating, job costing and dispatching software and American Contractor Accounting Software. These tools allow HSR to report from job sites in real time modes allowing HSR to complete and accurate job reporting capabilities and the ability to correct job related issues as they occur. This combined with 50 pieces of late model Caterpillar, Terex and Kenworth equipment allows us to self-perform the majority of work on projects. In addition HSR has excellent relationships with many subcontractors which allow us to competitively propose a complete package to most public and private projects.

HSR offers its clients strong project management skills in both construction and environmental consulting. This combination of project management expertise provides HSR with a unique ability to interface effectively with engineering consultants and regulatory agencies. For all projects, project management will be provided by a principal of HSR, thereby enabling contractual and other issues to be promptly resolved.

HSR has provided remediation services to a wide variety of private and public clients, including City and County agencies, engineering consultants, public utilities, land developers, the U.S. Navy, and numerous other publicly traded corporations.

Due primarily to the economic downturn particularly in the construction arena HSR Inc.

has done approximately $ 5,000,000 in sales through July 31, 2010. HSR currently has $ 1,000,000 in work currently under construction and continues to bid new projects daily. Projects are comprised of work both in the public and private arena.

During late 2009 through 2010 HSR began experiencing job related issues on at least two of its major projects which has now led to substantial claims and change order negotiations regarding those two projects. HSR has submitted a federal claims termination statement on one project in excess of $1.2 million dollars that is in the process of resolution. This $4,000,000 project contained several dozen client design changes which extended the time for completion originally planned for September 30, 2009 through the winter months and into May 2010. During that time period HSR advised its client of ongoing costs of office overhead and other related costs and based on the fact the final design changes were still not complete in April, 2010 the client terminated HSR's contract for convenience. The project was 95% complete at that point. HSR has hired a federal claims consultant to package and pursue the termination for convenience settlement on its behalf.

Due primarily to the above issues HSR's primary bonding company, Safeco placed a Stop Payment notice on all jobs currently bonded by Safeco thus freezing all funds on projects bonded by Safeco making it impossible for HSR to pay vendors and subcontractors on those jobs.

Based on the continuing problems with Safeco Mutual HSR began using a new surety to write public works surety bonds. We have been able to obtain bidders bonds from the new surety up to $ 3,500,000 and have approximately $ 1,500,000 in bonded projects on the books. HSR is continuing to bid work both in the public and private sector.

Attached to the declaration of Keith Dorsa is an interim operating budget. The projected income is more than sufficient to fund the budget without reducing the equity cushion for the creditors. Debtor believes that the creditors are adequately protected by the Debtor's assets and the equity cushion therein.

//

EMERGENCY MOTION FOR USE OF CASH COLLATERAL
5
Case: 10-58737    Doc# 9-1    Filed: 08/25/10    Entered: 08/25/10 14:10:56    Page 5 of 10

## V. Relief Requested.

By this Motion, the Debtor seeks interim and final orders, pursuant to Bankruptcy Code §§ 361 and 363, and Federal Rule of Bankruptcy Procedure 4001(b), authorizing the Debtor: 1) to use cash collateral in which Heritage and Safeco assert liens or interests, including without limitation all cash, deposit accounts, rents, and all other cash equivalents and cash collateral (as such term is defined in Bankruptcy Code § 363(a)) (collectively, the "Cash Collateral") pursuant to the provisions of Bankruptcy Code § 363(c); and 2) to grant to Heritage and Safeco, solely as adequate protection for and in the amount of any diminution in the value of any valid and unavoidable liens and security interests they may possess in the Cash Collateral arising as a result of such use, replacement liens on and security interests in the post-petition assets of the Debtor of the same type as the pre-petition assets of the Debtor encumbered by valid and unavoidable liens of Heritage and Safeco, with such replacement liens to have the same validity, priority, and extent as the pre-petition liens of Heritage (the "Replacement Liens"), provided, however, that the Replacement Liens shall not include, apply to, or encumber any avoidance actions and other claims for relief of the Debtor arising under Bankruptcy Code §§ 506(c), 510, 544, 545, 547, 548, 549, 550, 551, and 553 (collectively, the "Avoidance Actions") or any proceeds thereof.

Furthermore, the Replacement Liens will be subordinated to the compensation and expense reimbursement (excluding professional fees) allowed to any trustee thereafter appointed in the case.

## VI. Requested Relief Interim Order; Notice Thereof.

In order to permit the Debtor to continue its operations without undue disruption, the Debtor respectfully requests that this Court, pursuant to Bankruptcy Code § 363(c), enter an interim order permitting the requested relief on a temporary basis until a final hearing on the Motion and scheduling such final hearing on the Motion (the "Final Hearing") not

less than 15 days after the date of entry of the interim order, to consider entry of a final order authorizing the relief requested in this Motion. The Motion will be served on all parties-in interest.

An immediate need exists for the Debtor to be able to use the Cash Collateral. Without such authority, the Debtor cannot pay operating costs, overhead costs, and employees, cannot purchase necessary materials, and cannot otherwise complete the existing projects. Consequently, the immediate ability to use the cash collateral is necessary to preserve value for all creditors. The continued operation of the Debtor's business will preserve the going concern value and the Debtor's ability to propose and confirm a plan of reorganization. The Debtor should have a reasonable opportunity to do so.

Consequently, the Debtor requests that the Court enter an interim order authorizing the Debtor to use on an interim basis until the Final Hearing, the Cash Collateral in accordance with the Budget, subject to an upward variance of no more than 10%. Without such authorization on an interim basis, the Debtor will not be able to continue its operations, thereby causing immediate and irreparable harm to its assets. Entry of an interim order authorizing the Debtor to use the Cash Collateral pending the Final Hearing is in the best interests of the Debtor's estate, and will enable the Debtor to maintain ongoing operations and to avoid immediate and irreparable injury to the value of the estate. The provisions of Bankruptcy Rule 4001(b) are therefore satisfied.

**VII. Basis For Relief.**

The Secured Creditors are adequately protected by the Debtor's assets and the equity cushion therein. If and to the extent that the Secured Creditors' equity cushion diminishes as a result of the requested use of Cash Collateral, the Secured Creditors will be adequately protected against such diminution by the granting of the Replacement Liens. The relief requested herein is consistent with the guidelines set forth in the Northern District of California

EMERGENCY MOTION FOR USE OF CASH COLLATERAL
7
Case: 10-58737   Doc# 9-1   Filed: 08/25/10   Entered: 08/25/10 14:10:56   Page 7 of 10

Guidelines for Cash Collateral and Financing Stipulations (the "Cash Collateral Guidelines") and contains no provisions that would not normally be approved under those standards.

**VIII. Legal Authority.**

The continued operation of the Debtor's real property will preserve the Debtor's equity ability to propose and confirm a plan of reorganization. The Debtor should have a reasonable opportunity to do so. It is well-established that a bankruptcy court, where possible, should resolve issues in favor of reorganization. Thus, in *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.),* 727 F.2d 1017, 1019 (11th Cir. 1984), the court noted, "A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."

Especially in the early stages of a bankruptcy case, the bankruptcy court should resolve any doubt by offering the debtor a chance to reorganize and, therefore, should use going concern values. See, e.g., *In re Hoffman,* 51 Bankr. 42, 47 (Bankr. W.D. Ark. 1985); *In re A&B Heating & Air Conditioning, Inc.*, 48 Bankr. 401, 403-404 (Bankr. N.D. Fla. 1985); *In re Heatron, Inc.,* 6 Bankr. 493, 496 (Bankr. W.D. Mo. 1980). See, also, *In re Sun Valley Newspapers, Inc.,* 171 Bankr. 71, 75 (Bankr. 9th Cir. 1994) (the debtor should be given substantial latitude during the initial phase of the case if it is plausible that it can propose a confirmable plan).

Courts have allowed the use of cash collateral to enhance or preserve a debtor's reorganization value, even where the secured party is undersecured. In *Stein v. United States Fanners Home Admin. (In re Stein),* 19 Bankr. 458, 460 (Bankr. E.D. Pa. 1982), the bankruptcy court allowed the use of cash collateral in this situation reasoning that the creditor's "secured

position can only be enhanced by the continued operation of the [debtor's business]."

A debtor's use of estate property is governed by Bankruptcy Code § 363(c). Section 363 (c)(1) provides that a debtor may use estate property in the ordinary course of business without notice or hearing. Section 363(c)(2), however, provides that a trustee or debtor-in-possession "may not use, sell, or lease cash collateral … unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

A court's determination regarding authorization to use cash collateral depends on whether the entity's interest in cash collateral is adequately protected. Bankruptcy Code § 363(e). Bankruptcy Code § 361 provides a non-exclusive list of methods of adequate protection. Under this provision and relevant case law, the Secured Creditors' interest in the Cash Collateral is adequately protected by the Debtor's assets, their equity cushion, and by the Replacement Liens.

The existence of an "equity cushion" or a "value cushion"—the value of the collateral in excess of the amount of the secured claim at issue—"is the classic form of protection for a secured debt," and it is well settled that "the existence of an equity cushion, standing alone, can provide adequate protection." *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 (9th Cir. 1984). The *Mellor* court held that an equity cushion of 20% constituted adequate protection as a matter of law. Here, there is approximately $1 million of equity above and beyond all of the Secured Creditors' asserted liens.

The Bankruptcy Code also expressly provides that granting a replacement lien is a recognized method of providing adequate protection. Section 361(2) provides in pertinent part that "such adequate protection may be provided by … providing to such entity an additional or replacement lien to the extent that such use … results in a decrease in value of such

entity's interest in such property ...." Courts have also determined that replacement liens constitute adequate protection. *MBank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396 n.4 (10th Cir. 1987).

The Debtor proposes to grant a replacement lien to the Secured Creditors in the collateral acquired post-petition of the same type as their pre-petition collateral. The Replacement Liens will be of the same priority, extent, and validity as any pre-petition liens and will secure any diminution in the value of the Cash Collateral resulting from the Debtor's use thereof. The Replacement Liens will be subordinated to the compensation and expense reimbursement (excluding professional fees) allowed to any trustee hereafter appointed in the case.

**IX. Conclusion.**

WHEREFORE, the Debtor requests that this Court enter an interim order authorizing the use of cash collateral as requested above and for such further and additional relief as the Court deems appropriate and proper.

Dated: August 24, 2010                                     CAMPEAU GOODSELL SMITH
/s/ William J. Healy
William J. Healy