CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
GREGORY J. CHARLES, #208583
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California  95112
Telephone: (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>HSR GENERAL ENGINEERING CONTRACTORS INC,<br><br>　　　　　　　　Debtor. | Case No. 10-58737<br><br>CHAPTER 11<br><br>**STIPULATION FOR USE OF CASH COLLATERAL, AND FOR ADEQUATE PROTECTION** |

Subject to the entry of an order by the United States Bankruptcy Court substantially reflecting the covenants, terms and conditions contained herein (the "Order"), and pursuant to 11 U.S.C. Section 363(c)(2) and Federal Rules of Bankruptcy Procedure Rule 4001(c) and (d) Debtor and Debtor-in-Possession HSR GENERAL ENGINEERING CONTRACTORS INC ("Debtor" or "HSR") and Secured Creditor Heritage Bank of Commerce ("Secured Creditor" or "Heritage") hereby stipulate that Debtor is and shall be entitled to use Cash Collateral (as hereinafter defined) on the following terms and conditions:

1.  **Introductory Statement Regarding Cash Collateral**. In accordance with the court's Guidelines for Cash Collateral and Financing Motions and Stipulations (the "Guidelines") promulgated pursuant to the Federal Rules of Bankruptcy Procedure Rule 9029-1, as same relate and apply to uncontested motions or stipulations for the use of cash collateral under Bankruptcy Code

§363(c)(2) and (3) and Federal Rules of Bankruptcy Procedure Rule 4001(b) and (d), Debtor and Secured Creditor hereby certify as follows:

    a. ***The Name of Each Entity with an Interest in the Cash Collateral***: Debtor hereby certifies that the name of each entity with an interest in the Cash Collateral (if any) is: Heritage Bank of Commerce.

    b. ***The Purposes for the Use of the Cash Collateral***: Debtor is authorized to use Cash Collateral for the purpose of paying reasonable, necessary and ordinary expenses as specified in the operating budget prepared by Debtor, attached hereto (the "Budget"). Debtor may also use Cash Collateral to pay the quarterly fees required by the office of the United States Trustee and payment of Heritage's attorneys' fees and expenses as required by the loan documents. Except as authorized by this Stipulation and/or by any subsequent order of the Court, Debtor may not make any payments of Cash Collateral to or for the benefit of itself, or any other individual or entity, without Secured Creditor's prior written consent.

    c. ***The Terms, Including Duration, of the Use of the Cash Collateral***:

        i. <u>Collection of Cash Collateral</u>. Debtor is authorized to collect cash collateral. All cash collateral shall be deposited into a debtor-in-possession account maintained at Heritage Bank of Commerce (the "Heritage DIP Account"). Funds in the Heritage DIP Account, all of which is cash collateral of Heritage shall not be commingled with any other funds. The Debtor may not make any payments of cash collateral to or for the benefit of itself, or any other individual or entity, without Heritage's prior written consent, except as contained herein.

        ii. <u>Security Interest in Cash Collateral</u>. All cash of the bankruptcy estate and all proceeds of the Debtor's accounts receivable, equipment and inventory are cash collateral subject to Heritage's security interest.

        iii. <u>Replacement Lien</u>. Heritage is granted a replacement lien, effective as of August 23, 2010, upon all presently owned and hereafter acquired assets of the Debtor, including accounts receivable, to the same extent, priority and validity as existed on the Petition date.

    iv. <u>Administrative Expense Surcharge.</u>  During the term of this Stipulation, costs or expenses of administration shall not be imposed as a surcharge against Heritage's collateral pursuant to Bankruptcy Code Section 506(c).

    v. <u>Administrative Expense Claim.</u>  If, notwithstanding the grant of adequate protection provided pursuant to this Stipulation, the Debtor's use of cash collateral results in Heritage having an unsecured claim in this chapter 11 case, or any superseding chapter 7 case, such claim shall have the priority provided for in Bankruptcy Code Section 507(b).

    vi. <u>Expressly Prohibited Uses of Cash Collateral</u>. Without expanding the uses of Cash Collateral permitted by the foregoing paragraph by negative implication, the following uses of Cash Collateral are expressly prohibited, unless provided for in the Budget, consented to by Secured Creditor in writing, or ordered by the Court:

    (1) Any payment of professional fees.

    (2) Payment of any wages, salaries, commissions or other compensation to Debtor or any employee, independent contractor, affiliate, attorney or accountant.

    (3) Payment of any pre-petition or other invoices, bills, or liabilities.

    vii. <u>Term of Stipulation</u>.  Following the entry of the Order, this Stipulation shall remain in effect until (1) terminated by an event of default by the provisions of this Stipulation (2) if no event of default, fifteen (15) days written notice by either party of their intent to terminate this Stipulation. If Secured Creditor is granted relief from stay to foreclose on its security in the Collateral (whether entered into on the basis of a stipulation between Debtor and Secured Creditor or otherwise), this Stipulation shall automatically expire and terminate.

  d. ***<u>Any Liens, Cash Payments, or Other Adequate Protection to Be Provided to Each Entity with an Interest in the Cash Collateral Or, If No Additional Adequate Protection Is Proposed, an Explanation of Why Each Entity's Interest Is Adequately Protected</u>***:

    i. <u>Adequate Protection Payments to Secured Creditor</u>:  The Debtor is currently a party to certain financing accommodations with Heritage.  Debtor agrees to make adequate protection payments to Heritage on Debtor's SBA loan in the amount of $16,500 per month and on Debtor's revolving line of credit in the amount of $8,500 per month, which payments shall be made at the time and in the manner specified in the documents evidencing such financing

accommodations.  Other than the adequate protection payments specified in this Stipulation, Debtor shall otherwise perform all duties and obligations required by the financing accommodations in the time and manner specified therein, unless otherwise agreed with Heritage.

    ii. <u>Reporting</u>: Debtor shall provide the following reports at the times set forth below:

     A. <u>*A/R Agings*</u>.  Within 5 business days after the end of each calendar month end, an accounts receivable aging as of the last day of the preceding calendar month.

     B. <u>*Job Detail*</u>:  Within 5 business days after the end of each calendar month end, itemized for each bonding company bonding each particular job and/or for each unbonded job, and on a per job basis, and the following:

      i. an accounts receivable aging for each such job; as of the last day of the preceding calendar month

      ii. An itemization of the amount of unpaid subcontractor and supplier payables related to the job, identifying the amounts due each vendor as of the last day of the preceding calendar month; and

      iii. A computation of the difference between the accounts receivable owing on such job as of the last day of the preceding calendar month and the amount of unpaid subcontractor and supplier payables related to the job as of the last day of the preceding calendar month.

     C. <u>*Equipment Sales*</u>.   Within 5 business days after the end of each calendar week, an accounting for equipment sales weekly identifying total itemized appraisal value of the all equipment, the date each such piece was sold, the amount of net proceeds, and a list of the remaining equipment left to liquidate.

     D. <u>WIP Reports</u>.   Within 5 business days after the end of each calendar month end, a monthly work in process report showing the status of all pending jobs and any new jobs obtained by Debtor.

     E. <u>MORs</u>.  Copies of all monthly operating reports filed by Debtor with the court.

F. Other Reports. Al other reports required by the documents evidencing such financing accommodations.

e. *Certification*. The undersigned Certifying Professional (as defined in the Guidelines) has read the accompanying motion or stipulation and the Cash Collateral Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion or stipulation are in conformity with the Guidelines, except as set forth above. Said Certifying Professional understands and has advised the Debtor in possession or trustee that the court may grant appropriate relief under Federal Rules of Bankruptcy Procedure Rule 9024, if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statement.

Dated: October 7, 2010  **CAMPEAU GOODSELL SMITH**

/s/ *William J. Healy*
William J. Healy
Attorney for Debtor

Dated: October 7, 2010  **ROBERTSON & LEWIS**

By: /s/ *Wm. Thomas Lewis, Esq.*
Wm. Thomas Lewis, Esq.
Attorneys for Heritage Bank of Commerce

HSR, Inc.
Four Month Cash Flow Projection
Prepared 10-7-10

| | Balance of September | October | November | December |
|---|---|---|---|---|
| <u>Billings: (Sheet 3)</u> | 385,950 | 439,000 | 35,000 | 225,000 |
| **Expenditures:** | | | | |
| Operational Overheads | 69,800 | 59,200 | 40,840 | 50,840 |
| Direct Job Costs | 269,000 | 178,500 | 27,000 | 10,500 |
| Total Expenditures | 338,800 | 237,700 | 67,840 | 61,340 |
| **Debt Service** | | | | |
| SBA Loan | 16,500 | 16,500 | 16,500 | 16,500 |
| LOC: | - | - | - | - |
| Principal | 5,000 | 5,000 | 5,000 | 5,000 |
| Interest | 3,500 | 3,500 | 3,500 | 3,500 |
| | 25,000 | 25,000 | 25,000 | 25,000 |
| Monthly Surplus (deficit) | 22,150 | 176,300 | (57,840) | 138,660 |
| Cumulative | 22,150 | 198,450 | 140,610 | 279,270 |

HSR, Inc.
Operational Overhead Expenditures

|  | Balance of September | October | November | December |
|---|---|---|---|---|
| Wages | 20,000 | 40,000 | 28,000 | 28,000 |
| Payroll Taxes | 1,600 | 3,200 | 2,240 | 2,240 |
| 401k | 4,500 | 2,400 |  |  |
| Rent | 5,000 | 5,000 | 5,000 |  |
| Gen Liab Ins | 28,000 |  |  | 15,000 |
| Auto Leases | 800 | 2,200 | 1,300 | 1,300 |
| Office supplies | 400 | 400 | 200 | 200 |
| Fuel | 1,000 | 500 | 100 | 100 |
| Utilities | 3,000 | 3,000 | 2,000 | 2,000 |
| Telephone | 3,000 | 1,000 | 500 | 500 |
| Health Ins. | 2,500 | 1,500 | 1,500 | 1,500 |
|  | $69,800 | $59,200 | $40,840 | $50,840 |
|  |  |  |  |  |
| Debt Service |  |  |  |  |
| SBA Loan | 16,500 | 16,500 | 16,500 | 16,500 |
| LOC: |  |  |  |  |
|   Principal | 5,000 | 5,000 | 5,000 | 5,000 |
|   Interest | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 |
|  |  |  |  |  |
| Debt Service | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 |

Job Sheets Summary

|  | September | October | November | December |
|---|---:|---:|---:|---:|
| **Billings** | | | | |
| Carmel | 206,030 | 10,000 | | 120,000 |
| Line B | 105,920 | 335,000 | | 50,000 |
| East Cliff | - | 10,000 | | 35,000 |
| Davis Street | | 54,000 | 5,000 | |
| SCVWD - LBR | 74,000 | 30,000 | 30,000 | 20,000 |
| Cash Receipts | 385,950 | 439,000 | 35,000 | 225,000 |
| | | | | |
| **Expenditures** | | | | |
| Carmel | 120,000 | 6,500 | | |
| Line B | 100,000 | 75,000 | | |
| East Cliff | 5,000 | - | | |
| Davis Street | | 50,000 | | |
| SCVWD - LBR | 44,000 | 12,000 | 12,000 | 8,000 |
| Expenditures | $269,000 | $143,500 | $12,000 | $8,000 |
| | | | | |
| Unions | - | 35,000 | 15,000 | 2,500 |
| Total | 269,000 | 178,500 | 27,000 | 10,500 |