ORIGINAL

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

ROGER J. BROTHERS (State Bar No. 118622)
ERICKA L. ACKERET (State Bar No. 259151)
McNAMARA, NEY, BEATTY, SLATTERY,
BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile: (925) 939-0203

Attorneys for Creditor
Vander, LLC

FILED
OCT 28 2010
CLERK
United States Bankruptcy Court
San Jose, California

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>HSR GENERAL ENGINEERING CONTRACTORS, INC.,<br><br>Debtor. | Case No. 2010-58737<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE RENT UNDER 11 U.S.C. §§365 (d)(3) AND 503(b)(1), OR IN THE ALTERNATIVE, TO COMPEL THE DEBTOR TO REJECT LEASE UNDER 11 U.S.C. §§ 365(a) AND 365(d)(2)**<br><br>Date: December 3, 2010<br>Time: 2:00 p.m.<br>Location: Courtroom 3070<br>280 South First Street<br>San Jose, CA 95113 |

FAXED

MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF CONTENTS**

I. BACKGROUND AND FACTS ..................................................................................1

II. ARGUMENT AND RELIEF..................................................................................2

    A. Administrative Expenses for "Stub" Rent in August 2010.. .......................2

    B. Administrative Expenses for September, October, November and December 2010 Rent Obligations Under the Lease................................4

    C. The Debtor Should Be Compelled to Reject the Lease If It Cannot remain current in the Administrative Rent ......................................7

    D. Attorneys' Fees ..........................................................................................10

III. CONCLUSION ................................................................................................11

Case: 10-58737 Doc# 79 Filed: 10/28/10 Entered: 10/29/10 11:50:00 Page 2 of 15

# TABLE OF AUTHORITIES

**CASES**

Ernst Home Center. Inc. and EDC
    209 B.R. 955, 961 (Bankr. W.D. Wash. 1997)..................................................5

In re Brennick
    178 B.R. 305 (Bankr. D. Mass. 1995) .......................................................4,5, 7

In re Continental Airlines, Inc.
    146 B.R. 520, 527 (Bankr. D.Del. 1992) .........................................................3

In re Cukierman
    265 F.3d 846, 850-51 (9th Cir. 2001).............................................................4

In re Dieckhaus Stationers of King of Prussia
    73 B.R. 969, 973 (Bankr. E.D. Pa. 1987..........................................................4

In re Dry Dock & Repair Corn.
    62 B.R. 879, 882 (Bankr. E.D.N.Y. 1986).......................................................5

In re Duckwall-Alco Stores. Inc.
    150 B.R. 965, 971 n. 10 (Bankr. D. Kan. 1993)...............................................5

In re Garden Ridge Com.
    323 B.R. 136, 140-43 (Bankr. D.Del. 2005).....................................................3

In re LPM Corp.
    300 F.3d 1134, 1138 (9th Cir. 2002) ...............................................................5

In re M.S. Freight Distribution, Inc.
    (Bankr. W.D. Wash. 1994) 172 B.R. 976, 979)..............................................10

In re Pacific-Atlantic Trading Co.
    27 F.3d 401, 404-405 (9th Cir. 1994)......................................................3,4,5,7

In re Pudgie's Dev. Of NU. Inc.
    202 B.R. 832, 835-836 (Bankr. S.D.N.Y. 1996) .............................................5

In re Rare Coin Galleries of America. Inc.
    72 B.R. 415, 416 (Bankr. D. Mass. 1987) .......................................................5

In re Rebel Rents. Inc.
    291 B.R. 520, 530 ( Bankr. C.D.Cal. 2003).....................................................9

In re Telesphere Communications. Inc.
    148 B.R. 525 (Bankr. N.D. Ill. 1992) .........................................................4,6,7

In re The Barrister of Delaware, Ltd.
    49 B.R. 446 (D. Delaware 1985) .....................................................................4

In re Whitcomb Keller Morta. Co., Inc.
    715 F.2d 375, 379 (7th Cir. 1983) ...................................................................8

Case: 10-58737    Doc# 79    Filed: 10/28/10    Entered: 10/29/10 11:50:00    Page 3 of 15

In re ZB Co. Inc.
    302 B.R. 316, 319 (Bankr. D.Del. 2003) ............................................................. 2,3

NL Indus, v. GHR Energy Com.
    940 F.2d 957, 966 (5th Cir. 1991) ................................................................... 3

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)
    4 F.3d 1095, 1098 (2d Cir. 1993 ...................................................................... 8

Theatre Holding Corp v. Mauro
    (1975) 51 Cal.App.3d 590, 599 ...................................................................... 9

Zagata Fabricators. Inc. v. Superior Air Prods.
    893 F.2d 624, 627 (3rd Cir. 1990).) ................................................................ 3

**STATUTES**

11 U.S.C. §365(a) ....................................................................................... 1,8,11

11 U.S.C. §365(d)(2) .................................................................................. 1,8,11

11 U.S.C. §365(d)(3) ........................................................................... 1,2,3,4,5,7,8,10,11

11 U.S.C. §365(d)(4)(A) ............................................................................... 8

11 U.S.C. §503 ............................................................................................ 4,5

11 U.S.C. §503(b) ....................................................................................... 11

11 U.S.C. §503(b)(1) ................................................................................... 1

11 U.S.C. § 1107 ........................................................................................ 1

11 U.S.C. §1107(a) ..................................................................................... 8

11 U.S.C. §1108 ......................................................................................... 8

**MISCELLANEOUS**

2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993) ............................................. 8

Vander, LLC ("Lessor") submits the following Memorandum of Points and Authorities in support of its Motion to Compel Payment of Administrative Rent Under 11 U.S.C. §§ 365(d)(3) and 503(b)(1), or in the alternative, to Compel the Debtor to Reject Lease Under 11 U.S.C. §§ 365(a) and 365(d)(2). Lessor respectfully requests that the Court enter an order compelling HSR General Engineering Contractors Inc, the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor") to remit immediate payment of all post-petition rent and other charges due and owing to Lessor by the Debtor. In addition to the immediate payment of all post-petition rent and other charges, Lessor respectfully requests that the Court enter an order further compelling the Debtor to continue to timely pay all post-petition payments due to Lessor, or in the alternative, to reject the Lease, as hereinafter defined, and vacate the Premises, as hereinafter defined.

## I. BACKGROUND AND FACTS

The Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 23, 2010 (the "Petition Date"). The Debtor continues to operate its businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's case.

On or about December 8, 2009, the Debtor entered into a lease agreement with Lessor (the "Lease"), pursuant to which the Debtor leased from Lessor that certain real property commonly known as 1345 Vander Way, Santa Clara, California (the "Premises"). The Lease is for "non-residential real property" as that term is defined by the Bankruptcy Code and applicable law. A true and correct copy of the Lease is attached to the Declaration of Robert Bothman as Exhibit "A."

Pursuant to Section 1 of the Lease, the Lease was for an original term of five (5) years, with initial monthly base rent in the amount of Thirteen Thousand Dollars ($13,000) to be paid on the first (1st) of each month, commencing on February 1, 2010 (the "Base Rent"). Pursuant to Section 51 of the Lease, the Base Rent increases by four percent (4%) on an annual basis. Pursuant to Section 13.4 of the Lease, a late charge of ten percent (10%) of the Base Rent is incurred on the sixth (6th) of each month if the Base Rent is not paid on or before the sixth (6th) of

1
MEMORANDUM OF POINTS AND AUTHORITIES

each month. Moreover, pursuant to Section 13.5 of the Lease, all payments of Base Rent not received by Lessor when such payments are due incur interest at the rate of ten percent (10%) *per annum*, until paid.

Debtor has been in default by failing to pay, among other things, the Base Rent for July 2010, and for each month thereafter. As set forth in more detail in this Motion, as of the date of the hearing on this Motion, the total Base Rent owed to Lessor by the Debtor will total Sixty-Eight Thousand Dollars ($68,000), together with Eight Thousand Forty-One and 88/100 Dollars ($8,041.88) in late charges and interest (subject to adjustment).

As set forth in more detail in this Motion, post-petition and through the date of the hearing on this Motion, the Debtor will have defaulted under the Lease (i) for the nine (9) day "Stub" period of August 23 through August 31, 2010 by failing to pay all of the Base Rent and all sums due under the Lease equaling not less than Four Thousand Two Hundred Fifty-Seven and 20/100 Dollars ($4,257.20) (subject to adjustment), and (ii) for the months of September, October, November and December, 2010 by failing to pay the Base Rent and all sums due under the Lease equaling not less than Forty-Six Thousand Four Hundred Seventy and 94/100 Dollars ($46,470.94) (subject to adjustment).

## II. ARGUMENT AND RELIEF

### A. Administrative Expenses for "Stub" Rent in August 2010.

The Debtor filed its bankruptcy petition on August 23, 2010, without paying any rental obligations under the Lease for the month of August. Some courts have held that the obligation to pay stub rent accrues pre-petition (in this case on August 1, 2010), and therefore section 365(d)(3) does not apply. (See, In re ZB Co. Inc., 302 B.R. 316, 319 (Bankr. D.Del. 2003).) These holdings, however, do not preclude Lessor from recovering post-petition August Rent as an administrative expense claim, pursuant to section 503(b)(1) of the Bankruptcy Code. Section 503(b)(1)(A) allows an:

> "administrative expense claim for 'the actual, necessary costs and expenses of preserving the estate. . . [for services rendered after the commencement of the case]' which fills the stub period gap created by § 365(d)(3)."

2

MEMORANDUM OF POINTS AND AUTHORITIES

Case: 10-58737   Doc# 79   Filed: 10/28/10   Entered: 10/29/10 11:50:00   Page 6 of 15

(In re ZB Co. Inc., 302 B.R. 316, 319 (Bankr. D.Del. 2003).)

The words "actual" and "necessary" are construed to include debts that "benefit the estate and its creditors." (NL Indus. v. GHR Energy Com., 940 F.2d 957, 966 (5th Cir. 1991), cert. denied 502 U.S. 1032 (1992).)

The court in In re Garden Ridge Com., 323 B.R. 136, 140-43 (Bankr. D.Del. 2005), addressed this precise issue. The Garden Ridge court held that although section 365(d)(3) did not apply to rent obligations that accrued pre-petition, section 503(b)(l)(A) gave rise to an administrative expense claim for post-petition rent if "the property was actually used by the debtor in the ordinary course of business." (Id. (citing In re Continental Airlines, Inc., 146 B.R. 520, 527 (Bankr. D.Del. 1992).) The court further held that:

> "[w]hen the debtor occupies and uses the premises, the landlord is entitled to an administrative expense claim."

(Id. (citing Zagata Fabricators. Inc. v. Superior Air Prods., 893 F.2d 624, 627 (3rd Cir. 1990).) The Debtor continued to occupy the Premises post-petition throughout the month of August and conduct its business on-site.

Stub rent for the period of August 23-31, 2010 is made up of the following:

| Period of August 23 – 31, 2010 | |
|---|---|
| Base Rent (Pro Rata of $13,000 Base Rent for 9 Days) | $ 3,774.30 |
| Interest on Rent (10% Interest from August 23, 2010 through December 8, 2010) | $ 105.47 |
| Late Fees (10% of Base Rent) | $ 377.43 |
| Total: | $4,257.20[1] |

Based on the foregoing, Lessor requests that the Court (i) grant it an administrative expense claim in the amount of Four Thousand Two Hundred Fifty-Seven and 20/100 Dollars (**$4,257.20**) (subject to adjustment) for post-petition stub rent incurred during the period of August 23-31, 2010 and (ii) **compel immediate payment** of the same to Lessor. (In re Pacific-Atlantic Trading Co., 27 F.3d at 404-05 (Ninth Circuit Court of Appeals compelled payment of

---

[1] Total is subject to adjustment to calculate Interest on Rent owed as of date of payment.

3
MEMORANDUM OF POINTS AND AUTHORITIES

the rent at the contract rate as an administrative expense); In re Brennick, 178 B.R 305 (Bankr. D. Mass. 1995) (ordering immediate payment of post-petition rent); Telesphere Communications, Inc., 148 B.R. 525 (Bankr. N.D. 111. 1992) (ordering immediate payment of post-petition rent).)

### B. Administrative Expenses for September, October, November and December 2010 Rent Obligations Under the Lease.

Pursuant to section 365(d)(3) of the Bankruptcy Code, generally a debtor must:

> "timely perform all the obligations of the debtor. . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(l)."

The Debtor is thus obligated to pay all post-petition obligations under the Lease on a current basis until such Lease is either assumed or rejected. In this instance, the Lease has neither been assumed nor rejected, and therefore section 365(d)(3) of the Bankruptcy Code requires that the Debtor pay all post-petition Base Rent and other charges under the Lease on a current basis. (See, 11 U.S.C. § 365(d)(3).) Courts have consistently held that failure to comply with post-petition lease obligations gives rise to an administrative expense. (See, In re Cukierman, 265 F.3d 846, 850-51 (9th Cir. 2001) (the purpose of section 365(d)(3) is to ensure immediate payment of lease obligations so that the landlord is not left providing uncompensated services); see generally, In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994).) Moreover, the plain language of section 365(d)(3) and applicable case law requires the Debtor's **immediate payment** of the Lease obligations. (See, e.g., In re Dieckhaus Stationers of King of Prussia, 73 B.R. 969, 973 (Bankr. E.D. Pa. 1987) (section 365(d)(3) contemplates that debtor-tenants would "pay their rent, common area, and other charges *on time* pending the trustee's assumption or rejection of the lease"); In re The Barrister of Delaware, Ltd., 49 B.R. 446 (D. Delaware 1985) (landlord entitled to timely payments of post-petition rent pending assumption or rejection of lease).)

Further, the Debtor's obligations under 11 U.S.C. §365(d)(3) have priority over ordinary administrative claims allowed under 11 U.S.C. §503. Under 11 U.S.C. §365(d)(3), lease obligations must be paid **immediately** pursuant to the lease terms, without such delay as may

4
MEMORANDUM OF POINTS AND AUTHORITIES

occur as to ordinary section 503 claims. (See, e.g., In re Duckwall-Alco Stores, Inc., 150 B.R. 965, 971 n. 10 (Bankr. D. Kan. 1993) (lease obligations must be paid immediately); In re LPM Corp. 300 F.3d 1134, 1138 (9th Cir. 2002) (section 365(d)(3) of Bankruptcy Code providing a landlord with administrative priority for post-petition commercial rent in Chapter 11 proceedings has been interpreted broadly, consistent with its purpose of ensuring immediate payment of lease obligations to protect landlords pending the Debtor's decision to assume or reject a lease); Ernst Home Center, Inc. and EDC, 209 B.R. 955, 961 (Bankr. W.D. Wash. 1997) (before assumption or rejection, all obligations of debtor under lease, including rent, interest, late charges and other obligations, must be paid as they become due under the terms of the lease).)

Moreover, the Debtor's obligations under 11 U.S.C. §365(d)(3) are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to 11 U.S.C. §503. (In re Rare Coin Galleries of America, Inc., 72 B.R. 415, 416 (Bankr. D. Mass. 1987) (Trustee shall timely perform the rent obligation and pay rent as it comes due. "This obligation is made expressly independent of the normal standards for administrative expense claims under 11 U.S.C. § 503(b)(1)"); In re Dry Dock & Repair Corn., 62 B.R. 879, 882 (Bankr. E.D.N.Y. 1986) ("In unmistakable terms, Section 365(d)(3)…requires…debtors-in-possession to timely perform the debtor's lease obligations….This obligation is made expressly independent of the normal standards for administrative expense claims under 11 U.S.C. § 503(b)(1)").) Circuit Courts have also held that "section 365(d)(3) expresses the intent of Congress to secure for lessors the full amount of rent due during the period while the trustee determines to accept or reject the lease, regardless of any benefit to the estate. The statute does not require the lessor to take any action." (In re Pacific-Atlantic Trading Co., 27 F.3d 401, 405 (9th Cir. 1994).)

Other courts are in accord, even if the estate may later be administratively insolvent. (See In re Pudgie's Dev. Of NY, Inc., 223 B.R. 421, 426 (Bankr. S.D.N.Y. 1998) (rent paid to landlord not subject to recapture even if the estate is later administratively insolvent); In re Pudgie's Dev. Of NU, Inc., 202 B.R. 832, 835-836 (Bankr. S.D.N.Y. 1996) (lessor entitled to compelling payment of post-petition rent); In re Brennick, 178 B.R. 305 (Bankr. D. Mass. 1995) (ordering immediate payment and no requirement of future disgorgement if estate found administratively

5
MEMORANDUM OF POINTS AND AUTHORITIES

insolvent); In re Telesphere Communications. Inc., 148 B.R. 525 (Bankr. N.D. Ill. 1992) (ordering immediate payment and no requirement of future disgorgement if estate found administratively insolvent).

Here, the Debtor has not paid post-petition sums due under the Lease, including the Base Rent, interest and late fees for the period from September 1, 2010 through the date of the filing of this Motion, except for the payment of Ten Thousand Dollars ($10,000) as partial rent for September and October, 2010. Because the Debtor has failed to pay all post-petition sums due under the Lease to the Lessor, Lessor respectfully requests that the Court enter an order **compelling** the Debtor to **immediately** pay all sums due under the Lease (including the August stub rent), as set forth above and in more detail herein. In addition to compelling the Debtor to **immediately** pay all sums due under the Lease (including the August stub rent), the Court is requested to further order that the Debtor continue to pay all sums due under the Lease. **Such an order is necessary in order to prevent a multiplicity of motions such as the instant Motion.** If the past due rent payments are not made immediately and/or the continuing payments are not timely made, this Court is requested to further order that if such post-petition sums due under the Lease remain unpaid after the expiration of a five (5)-day notice of default delivered to counsel for the Debtor by facsimile and overnight mail, measured from the date of the facsimile transmission confirmation, that the Lease shall be deemed rejected and the Debtor shall vacate the Premises immediately, with the Lease for the premises being deemed rejected six (6) calendar days after expiration of the notice of default.

As of the date of the Hearing on this Motion, the Debtor will have failed to pay Lessor the sum of Forty-Six Thousand Four Hundred Seventy and 94/100 Dollars ($46,470.94) for the months of September, October, November and December, 2010, consisting of the following:

| Period of September, October, November, and December 2010 | |
|---|---|
| Base Rent ($13,000 Base Rent for 4 months, with payment of $10,000 of partial payment for September and October, 2010) | $ 42,000.00 |
| Interest on September Rent (10% of $13,000 from September 1-October 27, 2010 and 10% of $8,000 from October 28-December 3, 2010) | $ 278.35 |
| Interest on October Rent (10% Interest from October 1, 2010 through December 3, 2010) | $ 171.50 |

MEMORANDUM OF POINTS AND AUTHORITIES

Case: 10-58737    Doc# 79    Filed: 10/28/10    Entered: 10/29/10 11:50:00    Page 10 of 15

| | |
|---|---|
| Interest on November Rent (10% Interest from November 1, 2010 through December 3, 2010) | $ 113.97 |
| Interest on December Rent (10% Interest from December 1, 2010 through December 3, 2010) | $ 7.12 |
| Late Fees (10% of Base Rent for 3 months) | $ 3,900.00 |
| **Total:** | **$46,470.94[2]** |

The Base Rent for each month fully accrued on the first (1st) day of each respective month, and other charges accrued as more fully set forth in Section 13 of the Lease. Accordingly, under section 365(d)(3) of the Bankruptcy Code, the Debtor was required to pay timely all obligations to Lessor "notwithstanding section 503(b)(l)," whether or not it continued to conduct business at the Premises. (See, 11 U.S.C. § 365(d)(3); see also, In re Pacific-Atlantic Trading Co., 27 F.3d at 404 ("In light of [section 365(d)(3)'s] objectives, and the specific language requiring a trustee to perform 'all the obligations of the debtor...notwithstanding section 503(b)(l),' courts have held section 365(d)(3) to authorize an administrative expense claim for rent at the full contract rate.").)

Lessor therefore requests that the Court (i) grant it an administrative expense claim for the unpaid amounts due from September, October, November and December, 2010, pursuant to section 365(d)(3) of the Bankruptcy Code in the amount of Forty-Six Thousand Four Hundred Seventy and 94/100 Dollars ($46,470.94), (ii) **compel** the Debtor's **immediate payment** of those sums and (iii) order the Debtor to remain current in all payments due under the Lease. (In re Pacific-Atlantic Trading Co., 27 F.3d at 404-05 (Ninth Circuit Court of Appeals ordered compelling payment of the rent at the contract rate as an administrative expense); In re Brennick, 178 B.R. 305 (Bank. D. Mass. 1995) (ordering immediate payment of post-petition rent); In re Telesphere Communications, Inc., 148 B.R. 525 (Bankr. N.D. Ill. 1992) (ordering immediate payment of post-petition rent).

C. **The Debtor Should Be Compelled to Reject the Lease If It Cannot Remain Current in the Administrative Rent Payments.**

---

[2] Total is subject to adjustment to calculate Interest on Rent owed as of date of payment.

7
MEMORANDUM OF POINTS AND AUTHORITIES

Section 365(a), in conjunction with Section 1107(a), of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." (11 U.S.C. §365(a) and 1107(a).) As noted by the United States Court of Appeals for the Second Circuit, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" (Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

The Debtor has not yet assumed or rejected the Lease. Notwithstanding the fact that the Debtor has the lesser of one hundred twenty (120) days after the date of the order for relief or the date of the entry of an order confirming a plan to assume or reject a nonresidential real property lease (11 U.S.C. §365(d)(4)(A)), and that period has not yet expired, as noted above, during the one hundred twenty (120)-day period, the Debtor must continue to "perform all the obligations of the debtor under the Lease. (11 U.S.C. § 365(d)(3).) In this case, the Debtor has failed to perform such obligations by failing to pay any post-petition sums due under the Lease to Lessor. Accordingly, section 365(d)(2) provides a vehicle by which a nondebtor party to a lease may request the Court to order the Debtor to assume or reject a lease within a specified time period. (11 U.S.C. § 365(d)(2).) That is precisely what Lessor seeks here. Due to the Debtor's failure to comply with section 365(d)(3), if the Debtor is unable or objects to continuing to pay the administrative rent and other charges due under the Lease, the Debtor should be compelled under 365(d)(2) to reject the Lease under section 365(a) within six (6) calendar days of the Court's order on this Motion.

Although section 365(d)(2) does not establish express standards by which the determination to assume or compel rejection of a lease prior to the expiration of the time period set forth in section 365(d)(4)(A) is to be made, the Court does not abuse its discretion by considering the interests of the nondebtor party pending the Debtor's decision to assume or reject. (See, e.g., In re Whitcomb Keller Morta. Co., Inc., 715 F.2d 375, 379 (7th Cir. 1983).

8
MEMORANDUM OF POINTS AND AUTHORITIES

Furthermore, in <u>Theatre Holding Corp. v. Mauro</u>, 681 F.2d 102, 105 (2nd Cir. 1982), the Court set forth a four (4) part test to determine whether or not to compel a debtor to reject an executory contract. The four (4) factors are:

(1) the damage the other party to the contract would suffer, beyond compensation available under the Bankruptcy Code;

(2) the importance of the contract to the debtor's business and reorganization;

(3) whether the debtor has had sufficient time to appraise its financial situation and potential value of its assets in formulating a plan; and

(4) whether the exclusivity period has terminated.

(See also, <u>In re Rebel Rents. Inc.</u>, 291 B.R. 520, 530 ( Bankr. C.D.Cal. 2003) (holding that the debtor could not continue to maintain its freedom to assume or reject its equipment lease without paying for the use of the equipment, and that sufficient grounds existed to shorten time within which debtor would have to decide whether to assume or reject its unexpired equipment leases lest the debtor be allowed to "have its cake and eat it too", citing <u>Theatre Holding Corp v. Mauro</u>, 681 F.2d at 105.)

In this case, Lessor continues to be damaged by the Debtor's ongoing use and enjoyment of the Premises without compensation. Lessor relies upon the payment of the rent and other charges due under the Lease in order to pay the mortgage which attaches to the Premises. Debtor's failure to remit payment of the rent and other charges due under the Lease puts Lessor in the position of defaulting on the mortgage attached to the Premises. Next, Debtor has admitted in its Motion to Sell Free and Clear of Liens and Interest in Personal Property and Pay Related Sales Expenses, which was filed on September 21, 2010 (See Docket No. 31), that it intends to continue its business in a location that is smaller and less expensive than the Premises. As such, the Lease has no importance to the Debtor's business and reorganization. Further, even if Debtor contends that it cannot reorganize without the Lease, if the Debtor is not generating sufficient revenues post-petition to make the monthly payments called for under the Lease, then it would appear that the Debtor has little likelihood of reorganization while the Lease remains in effect. Moreover, this case was filed on August 23, 3010 (more than 60 days ago), which is ample time for the

9

MEMORANDUM OF POINTS AND AUTHORITIES

Debtor to appraise its business and financial situation and the potential value of the Lease in formulating a plan. Finally, the exclusivity period has not terminated. However, unless the Debtor can demonstrate that a prospective assumption of the Lease will be feasible, rejection is a foregone conclusion and the only remaining question is the date on which such rejection will occur.

Under the circumstances of this case, the risk of loss should not be borne by Lessor, and the Court should enter an order that the Lease shall be rejected on the first business day that is no more than six (6) calendar days following entry of such order, unless adequate assurance has been made that the Debtor will continue to pay all administrative rent and other charges.

### D. **Attorneys' Fees.**

Section 365(d)(3) unequivocally calls on the debtor to "perform all obligations ...under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." This has been interpreted to include "the payment of interest, late fees and attorneys' fees and costs..." to the extent required by the terms of the lease. (In re M.S. Freight Distribution, Inc. (Bankr. W.D. Wash. 1994) 172 B.R. 976, 979). Here, Lessor is entitled to the recoupment of attorneys' fees. More specifically, Section 31 of the Lease provides, in pertinent part, as follows:

> "If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment."

Because the Debtor unreasonably refused to timely pay the rent and other charges due under the Lease despite notice that such rent was demanded, Lessor was forced to employ attorneys and incurred attorneys' fees in (1) demanding payment of the monies owed under the Lease from Debtor and Debtor's counsel and (2) bringing this motion to compel payment of administrative rent. (See Declaration of Robert Bothman.) Because the Debtor's defaults occurred during the post-petition/pre-rejection period, the attorneys' fees associated with those defaults should be recoverable as an administrative expense.

Accordingly, Lessor requests the court award it no less than Ten Thousand Dollars ($10,000) (subject to adjustment) in attorneys' fees for the cost of filing this Motion pursuant to section 365(d)(3) and 503(b) of the Bankruptcy Code and under paragraph 31 of the Lease.

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, Lessor respectfully requests that the Court enter an order (i) granting this Motion, (ii) granting Lessor an administrative expense claim in the amount of not less than Four Thousand Two Hundred Fifty-Seven and 20/100 Dollars ($4,257.20) (subject to adjustment), pursuant to section 503(b)(1)(A) of the Bankruptcy Code for post-petition stub rent for the period of August 23-31, 2010, and compelling the Debtor to immediately pay that stub rent to Lessor, (iii) granting Lessor an administrative expense claim in the amount of not less than Forty-Six Thousand Four Hundred Seventy and 94/100 Dollars ($46,470.94) (subject to adjustment), pursuant to sections 365(d)(3) of the Bankruptcy Code for unpaid September, October, November and December rent and other charges due under the Lease, and compelling the Debtor to pay immediately the administrative rent and other charges to Lessor, (iv) awarding Lessor's its attorneys' fees and other expenses related to its enforcement of its rights under section 365(d)(3) and 503(b)(1) of the Bankruptcy Code in an amount not less than Ten Thousand Dollars ($10,000) (subject to adjustment), (v) compelling the Debtor to continue to timely pay all post-petition payments due under the Lease and (vi) for such other and further relief as is just and proper. In the event that the Debtor is unable to continue to timely pay all post-petition payments due under the Lease, Lessor respectfully requests that the Court further compel the Debtor to reject the Lease under 11 U.S.C. §§ 365(a), and 365(d)(2).

Dated: October 28, 2010

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & BROTHERS LLP

By: _____
Roger J. Brothers
Ericka L. Ackeret
Attorneys for Creditor
Vander, LLC

11
MEMORANDUM OF POINTS AND AUTHORITIES