CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
WILLIAM J. HEALY, SBN 146158
440 N. 1st Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Case No.10-58737 |
| | ) | |
| HSR GENERAL ENGINEERING CONTRACTORS, INC., | ) ) | CHAPTER 11 |
| | ) | DATE: March 15, 2011 |
| Debtor. | ) | TIME: 2:00 p.m. |
| _____ | ) | JUDGE: Hon. Charles Novack |
| | | 280 S. First Street, Room 3070 |
| | | San Jose, California |

**AMENDED INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**

# TABLE OF CONTENTS

Case Initiation and Administration ..... 3

Post-Petition Operations ..... 5

Cash Collateral ..... 4

Asset Sales ..... 6

Real Property Lease ..... 7

Safeco/First National Litigation ..... 7

Creditor Claims Analysis ..... 9

Fee Application ..... 10

Conclusion ..... 10

CERTIFICATION BY ATTORNEY FOR DEBTOR ..... 12

DEBTOR-IN-POSSESSION'S STATEMENT ..... 13

The AMENDED INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR ("Application") of Campeau Goodsell Smith ("CGS" or "Applicant") respectfully represents:

Applicant is a professional corporation, each of whose attorneys is duly licensed and admitted to practice before the above-entitled Court, and serve as attorneys for debtor herein, having been so retained upon order of this Court. As such attorneys, Applicant has performed various legal services, particulars of which are hereinafter set forth:

## CASE ADMINISTRATION

A. General Pre-Petition Administration.

Debtor HSR is a San Jose based general engineering contractor specializing in environmental remediation and heavy civil engineering, with many projects undertaken for governmental entities. Until early 2010, Safeco/First National provided performance bonds for governmental-related projects; due to on-going disputes, HSR replaced Safeco as its surety for new projects. In/about June 2010, Safeco filed stop-payment notices on several pending projects, resulting in termination of revenues to HSR on those bonded projects, resulting in HSR's inability to complete work on unfinished Safeco-bonded projects, and ultimately resulting in those governmental entities rejecting HSR's bids on other non-Safeco-related new project proposals.

In June 2010, HSR contacted CGS for to address Safeco's stop-payment demands.

B. General Post-Petition Administration.

In August 2010, after Safeco proved unwilling to resolve its stop-payment demands, HSR engaged CGS to evaluate a potential bankruptcy reorganization. CGS conferred with

3

debtor concerning its financial circumstances and reorganization alternatives, and debtor elected to file a Chapter 11 petition to reorganize its affairs.

During these proceedings, CGS also conferred with debtor concerning the obligations required of it pursuant to the Bankruptcy Rules and the U.S. Trustee Guidelines, including preparation of monthly operating reports, and has assisted debtor in the preparation of such reports. CGS communicated on various subjects with representatives of the U.S. Trustee's office and the Bankruptcy Clerk's office with respect to issues arising in this case. CGS has also conferred with various creditors concerning claims asserted. CGS has regularly conferred with various other counsel taking part in this case and has regularly conferred with various creditors concerning developments in this case. CGS has also advised debtor concerning various correspondence received from taxing authorities.

In connection with the foregoing, over the past 5 months, CGS has expended a total of 62.1 hours, at a cost to the estate of $25,790.00. The foregoing consists of two main sub-categories, General Pre-Petition Administration wherein CGS expended a total of 25.3 hours, at a cost to the estate of $10,135.00 and General Post-Petition Administration wherein CGS expended 36.8 hours, at a cost to the estate of $15,655.

**CASH COLLATERAL**

Immediately after the Chapter 11 case was commenced, CGS commenced actions to identify and address any cash collateral issues.

CGS prepared for an emergency hearing by obtaining client financial documentation regarding petition date cash collateral, and by contacting Heritage Bank's counsel and Safeco's counsel about their respective rights/claims to debtor's cash collateral assets. (At that time, Safeco contended that the Safeco-related project proceeds were NOT cash collateral but rather

4

were OUTSIDE the bankruptcy estate and wholly owned by Safeco by virtue of its general indemnity agreement). At the emergency hearing, Heritage consented to debtor's use of cash collateral in accordance with debtor's proposed operating budget. Safeco opposed debtor's use of cash collateral, but the Court agreed that insofar as debtor was not using Safeco-related project proceeds, Safeco's opposition was without merit, and the Court approved the motion.

For purposes of a further cash collateral hearing, CGS thereafter assisted debtor in assembling the necessary financial data to calculate petition-date cash collateral and to prepare an estimated budget for on-going operations. CGS discussed this data and budget with Heritage counsel Lewis and with Safeco counsel Long. CGS appeared at the continued Court hearing on the continued cash collateral motion. In the course of these hearings, Safeco's counsel admitted to the Court that Safeco had no desire to prohibit debtor's on-going operations – but also would not consent to debtor's use of any Safeco-related project proceeds, even if those proceeds were necessary to complete unfinished Safeco-bonded projects.

Thereafter, CGS continued to assist debtor in arranging a series of on-going cash collateral agreements with Heritage, and has continued to attend regularly scheduled hearings to approve the same, which have continued through the present date. From time to time, CGS counsel and Heritage counsel conferred regarding the status of debtor's payments to Heritage.

In connection with the foregoing, CGS has expended 38.1 hours, at a cost to the estate of $16,282.50.

**POST-PETITION OPERATIONS**

As debtor's general bankruptcy counsel, CGS has been asked by debtor to address and advise debtor on various bankruptcy-specific and non-bankruptcy-specific issues arising in debtor's general business operations, such as personnel issues, union and labor issues, banking

5

and financial issues, corporate issues and claims asserted by debtor against various entities. CGS was required to intercede to stop further prosecution of pre-petition lawsuits and to prevent the Water Quality Control Board from prosecuting administrative hearings contrary to the strictures of the automatic stay. CGS was involved in efforts to resolve collection of debtor's receivables.

CGS has routinely assisted debtor and its bookkeeping personnel in resolving its monthly operating report issues and in obtaining insurance renewals, including preparing and filing a motion to allow financing for the insurance premiums.

CGS has routinely conferred with the several creditor attorneys active in this case to discuss the status and developments in the case.

As debtor has reduced its corporate footprint, CGS has been called upon to negotiate the surrender and disposition of various leased assets (including debtor's real property lease), and to determine the claims related thereto. To that end, CGS has negotiated various surrender and payment stipulations -- all of which have been subsequently approved by this Court.

In connection with the foregoing, over the past 5 months, CGS has expended 82.8 hours, at a cost to the estate of $35,445.00. The foregoing consists of three main sub-categories, including General Post-Petition Operations wherein CGS expended a total of 36.7 hours, at a cost to the estate of $16,012.50, Insurance Premium Financing wherein CGS expended a total of 13.3 hours, at a cost to the estate of $5,662.50, and Personal Property Lease Issues wherein CGS expended 31.4 hours, at a cost to the estate of $13,345.00.

**ASSET SALES**

From the outset of this Chapter 11 case, debtor and CGS concluded that the sale of debtor's substantial rolling stock would be necessary to reduce debtor's obligations to Heritage Bank to a manageable sum. CGS immediately conferred with Heritage's counsel regarding the

6

auction sale of debtor's excess equipment, and the terms thereof.  In addition, CGS has conferred with the prospective equipment auctioneer from the outset of this Chapter 11 case.

In early September 2010, after conferring with Heritage's counsel, CGS filed an application to engage broker RAM for the auction sale of debtor's excess equipment.  CGS also prepared a motion to approve the proposed auction sale terms and equipment sales, which was later revised to account for modified terms.  The Court approved the retention of broker RAM, and the proposed auction sale terms, in November 2010.

Debtor obtained a gross sum exceeding $1,000,000 from the equipment auction sale.

After completion of the auction sale, CGS assisted debtor and Heritage in resolving an accounting for the net sale proceeds.  Heritage's debt was reduced by about $850,000 as a consequence of the equipment auction sale, and debtor retained about $235,000 in net proceeds from unencumbered titled vehicles (of which the sum of $40,000 has been sequestered based on Heritage's claim that an equipment asset sold several months pre-Petition should be compensated from the post-Petition unencumbered assets proceeds).

In connection with the foregoing, CGS has expended 34.9 hours, at a cost to the estate of $14,872.50.

**REAL PROPERTY LEASE**

In August 2010, only two days after the Chapter 11 petition was filed, CGS notified debtor's landlord counsel Brothers that debtor would be terminating its lease and exiting the leased facility as soon as the anticipated equipment auction was concluded.

In early November 2010, debtor's landlord filed its motion to compel debtor to assume or reject its real property lease.  CGS evaluated the landlord's motion, and prepared a response to the same – stating debtor's prior representation that debtor would be terminating its lease and

7

exiting the leased facility as soon as the anticipated equipment auction was concluded. CGS also pointed out that landlord's claim did not properly account for debtor's security deposit.

At the early December 2010 hearing on the landlord's motion, the Court accepted debtor's representation that it would remove itself from the premises by the effective lease termination date. In December 2010, the debtor removed itself by the lease termination date.

CGS thereafter opposed landlord's motion seeking substantial attorneys fees.

In connection with the foregoing, CGS has expended 15.0 hours, at a cost to this estate of $6,375.00.

## SAFECO/FIRST NATIONAL LITIGATION

Debtor filed its voluntary petition within 90 days from the recordation date of Safeco's UCC-1 security interest lien against debtor's assets. Consequently, CGS was at all times prepared to seek judgment avoiding this preference lien. Thus, within days after the petition filing date, CGS filed a complaint to avoid Safeco's lien.

In addition, CGS concluded that Safeco's previously-posted stop-payment notices were preventing debtor from effectively reorganizing its business operations and collecting receivables necessary to complete unfinished Safeco-related projects. CGS therefor prepared and filed a motion for a preliminary injunction to prevent Safeco's on-going damage to debtor's business. In response to Safeco's opposition, CGS also researched and prepared debtor's reply pleadings.

Safeco also concurrently sought relief from stay to obtain debtor's receivables for Safeco's own account. CGS prepared opposition to Safeco's motion.

After the October 2010 hearing on the competing motions, the Court issued its rulings determining that debtor had not proven an irreparable (non-monetary) harm (and thereby

8

denying debtor's motion), and that Safeco had not proven that its claim was validly secured in light of the preference claim (and thereby denying Safeco's motion). In response, CGS conducted further legal research to present debtor's claims.

Shortly thereafter, in late October 2010, CGS counsel Goodsell wrote to Safeco counsel Diwik recommending that the parties meet to discuss resolving these claims. Safeco counsel Diwik never responded to CGS counsel.

In mid-December 2010, Safeco counsel Long contacted CGS counsel Goodsell to discuss a settlement meeting. Before any meeting was scheduled, however, Safeco required responses to various "interrogatories" – to which debtor responded promptly. However, no further progress toward a settlement meeting was made until January 2011, when the Court intervened to require Safeco to meet and discuss the disputed matters. That settlement meeting occurred on January 27, 2011.

In connection with the foregoing, Applicant has expended 77.0 hours, at a cost to the estate of $33,577.50. The foregoing consists of four main sub-categories, including General Analysis of Rights wherein CGS expended a total of 26.25 hours, at a cost to the estate of $11,000.00, Adversary Proceeding (excluding injunctive relief and stay matters) wherein CGS expended a total of 3.50 hours, at a cost to the estate of $1,487.50, Injunctive Relief and Stay Litigation wherein CGS expended a total of 42.15 hours, at a cost to the estate of $18,530.00, and District Court Matter wherein CGS expended 5.10 hours, at a cost to the estate of $2,262.50.

**CREDITOR CLAIMS ANALYSIS**

Generally, debtors commence claims litigation at the conclusion of Chapter 11 plan confirmation proceedings. In this matter, no claims litigation (other than the Safeco litigation)

9

has yet been undertaken.  Applicant has, nonetheless, reviewed numerous creditor claims as they have been filed with the Court, and has conferred with debtor concerning their respective merits.

In connection with the foregoing, over the past 5 months, Applicant has expended 12.7 hours, at a cost to the estate of $5,397.50.

## FEE APPLICATION

Applicant has spent approximately 30 hours in preparing this interim fee application at a cost of approximately $14,250.00.  (Per Guidelines, $7,610.00 is 5% of the application sum).

## CONCLUSION

In the course of representation in these matters from August 21, 2010 through December 24, 2010, Applicant has devoted in excess of 350 hours of professional services, as indicated on Applicant's project billing statements, which are attached as Exhibit A.  The Statement identifies the individuals who have performed specific services and is summarized as follows:

| | | |
|---|---|---|
| Scott L. Goodsell (SLG) | 63.20 | 475.00/hr. |
| Scott L. Goodsell (SLG) | 2.50 | No Charge |
| Gregory J. Charles (GJC) | 24.40 | 450.00/hr. |
| Gregory J. Charles (GJC) | 2.00 | No Charge |
| William J. Healy (WJH) | 261.60 | 425.00/hr. |

In view of the time expended and the responsibilities assumed, Applicant respectfully submits that the reasonable value of its services hereinabove set forth is $152,180.00.

Applicant has also expended the sum of $1,752.99 for court fees, transcripts, photocopying, postage, telephone and other costs, as set forth in Exhibit B.  All requests for costs are based on the Guidelines for Compensation of Professionals.

Applicant believes that the services so rendered and costs so incurred herein were necessary and that the fees and costs requested constitute reasonable and necessary fees

10

expended on behalf of the estate. In accordance with its Rule 2016(b) Disclosure of Compensation, Applicant has previously received a retainer in the amount of $25,000.00 from Debtors in connection with the Chapter 11 case. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

Applicant is informed and believes that Debtors have approximately $240,000 in current available funds; Applicant has agreed to be paid by Debtors as circumstances permit.

WHEREFORE, Applicant prays that this court enter its order (i) approving as interim compensation those Chapter 11 attorneys fees incurred and costs expended by Applicant from August 21, 2010 through December 24, 2010 in its representation as further set forth above; (ii) authorizing Debtors to pay to this Applicant the sum of $152,180.00 for services rendered and $1,752.99 for costs expended but not yet compensated by Debtors as set forth in this Application (with credit for retainer provided); and (iii) for such further relief as this court deems proper.

DATED: February 15, 2011           CAMPEAU GOODSELL SMITH

                                            By __William J. Healy_____
                                                William J. Healy
                                                Attorneys for Debtor

**CERTIFICATION ON INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**

I, William J. Healy, say:

1. I am an attorney with the law firm of Campeau Goodsell Smith, attorneys of record for debtors herein. I make this declaration in support of said law firm's application for interim compensation and reimbursement of expenses as attorneys for debtors in this Chapter 11 case. If called as a witness, I would competently testify as follows:

2. In accordance with its Disclosure of Compensation, Applicant has previously received a retainer in the amount of $25,000.00 from the debtor in connection with this case.

3. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Jose, California, on February 15, 2011.

                                                                                   _William J. Healy_
                                                                                   William J. Healy

**DEBTOR-IN-POSSESSION'S STATEMENT RE FEE APPLICATION**

I, Keith Dorsa, say:

1. I am the Responsible Person for the debtor-in-possession.

2. I have reviewed the billings regarding the interim Chapter 11 fee application filed by Campeau Goodsell Smith, counsel of record for the debtors-in-possession herein, and support said application.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Jose, California, on February 15, 2011.

                                                      /s/ Keith Dorsa
                                                      Keith Dorsa