SEDGWICK, DETERT, MORAN & ARNOLD LLP
JAMES P. DIWIK (Bar No. 164016)
james.diwik@sdma.com
JOEL M. LONG (Bar No. 226061)
joel.long@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Creditor
First National Insurance Company of America

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 10-58737 |
| HSR GENERAL ENGINEERING CONTRACTORS, INC., | Chapter 11 |
| Debtor. | **OBJECTION TO AMENDED INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR** |
| | Date: March 15, 2011<br>Time: 2:00 p.m.<br>Judge: Hon. Charles Novack |

Creditor First National Insurance Company of America ("First National") objects to the

February 15, 2011 *Amended Interim Application for Compensation and Reimbursement of*

*Expenses by Attorney for Debtor* (the "Amended Application").[1]

Preliminarily, it should be noted that the applicant submitted its initial application for

compensation on January 10, 2011, which drew objections from both First National and Heritage

Bank. Despite withdrawing the initial application, filing the Amended Application, and thereby

---

[1] The Application is Document No. 180 on the Court's docket.

Case: 10-58737    Doc# 184    Filed: 03/08/11    Entered: 03/08/11 16:32:13    Page 1 of 5

1   giving itself a "second bite at the apple," the applicant's Amended Application does little more

2   than attach the exhibits that were missing from the original application.  Otherwise, the Amended

3   Application suffers from essentially the same defects as the initial application and therefore is

4   properly denied by the Court.

5          First National's specific objections to the Amended Application are as follows:

6          1.      None of the material portions of the Amended Application are supported by a

7   declaration from the applicant.  The declaration of William J. Healy states nothing more than that

8   the applicant previously received a $25,000 retainer, and that none of the money that the

9   applicant has received or will receive will be shared with anyone outside of the applicant's law

10  firm.  Indeed, counsel's declaration does not even attest that the attachments to the Amended

11  Application are true and correct copies of invoices that fully and accurately set forth the tasks

12  performed and time expended by the debtor's counsel in this Chapter 11 proceeding.  Thus, there

13  is no competent evidence before the Court to substantiate the Application.

14         2.      The Amended Application fails to comply with the "Narrative" section of the

15  Court's Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees

16  (the "Guidelines") in at least two ways.  First, it does not provide "meaningful guidance to the

17  Court as to the complexity and difficulty of the task, the professional's efficiency, and the results

18  achieved."  In that regard, the Amended Application generally describes work performed, but

19  does not discuss the complexity and difficulty of the work, whether or to what extent the work

20  was performed efficiently, and whether or to what extent the work achieved positive results for

21  the estate.  In fact, the Amended Application seeks compensation for work that unquestionably

22  was of no benefit to the estate.  By way of example, the applicant filed a motion for preliminary

23  injunction in the debtor's adversary proceeding against First National without even addressing,

24  let alone attempting to meet, the procedural requirements for such a motion.  Second, the

25  Application includes three work categories in excess of $20,000 each – specifically, the

26  categories entitled "Case Administration" ($25,790), "Post-Petition Operations" ($35,445) and

27  "Safeco/First National Litigation" ($33,577.50).  The Guidelines specifically state that "[t]he

28  maximum amount that should be included in a single category should generally be $20,000," and

SF/2123150v1

-2-

OBJECTION TO AMENDED APPLICATION

1  that "[g]enerally, each category should contain less than $20,000."

2        3.      The "Narrative" section of the Guidelines suggests that an applicant may include

3  miscellaneous items in a "case administration" category, but that such a category generally

4  should not represent more than 15% of the fee request.  Here, the "Case Administration"

5  category of the Application represents 17% of the fee request.

6        4.      With respect to Chapter 11 cases, Section 2 of the Guidelines provides that an

7  application for compensation should "describe the general operations of the debtor; whether the

8  business of the debtor, if any, is being operated at a profit or loss; the debtor's cash flow; whether

9  a plan has been filed, and if not, what the prospects are for reorganization and when it is

10 anticipated that a plan will be filed and a hearing set on the disclosure statement."  The

11 Application does not contain any of this information.  Further, the debtor's monthly operating

12 reports suggest that the debtor's business is being operated at a loss and that its cash flow is

13 trending downward.  Likewise, there is nothing to suggest that the debtor's prospects for

14 reorganization are bright, and there has been no indication as to when a plan will be filed or when

15 a hearing on the disclosure statement will be set.

16       5.      Section 2 of the Guidelines also provides that an application for compensation

17 should "state the amount of money on hand in the estate and the estimated amount of other

18 accrued expenses of administration."  Here, the applicant states that it is informed and believes

19 that the debtor has "approximately $240,000 in current available funds."  The applicant further

20 states that it "has agreed to be paid by [debtor] as circumstances permit."  The Application does

21 not set forth the estimated amount of other accrued expenses of administration as required by the

22 Guidelines.  Further, the Application does not explain how circumstances permit or justify

23 payment of 64% of the estate's purported currently available funds for legal expenses.[2]

24       6.      Section 6 of the Guidelines provides that "[f]ees for preparation of a fee

25 application *may not exceed five percent* of the total amount of fees and costs requested in the

26 application."  (Emphasis in original.)  Here, the applicant claims that it "spent approximately 30

27 ─────────────
        [2] The Application requests fees and costs totaling $154,332.99, which represents 64% of the
28 $240,000 in "current available funds."

1  hours" preparing the Application and requests fees in the amount of $14,250, or more than nine

2  percent of the $152,180 in total fees requested.

3          7.      The Application does not attached the transmittal letter required by Section 7 of

4  the Guidelines.

5          8.      Section 8 of the Guidelines requires a multi-part certification by the applicant.  No

6  certification has been provided.

7          9.      In the "Case Administration" section of the Application, the applicant states as

8  follows:  "CGS has also conferred with various creditors concerning claims asserted.  CGS has

9  regularly conferred with various other counsel taking part in this case and has regularly conferred

10  with various creditors concerning developments in this case."  Then, in the separate "Post-

11  Petition Operations" section of the Application, the applicant states that "CGS has routinely

12  conferred with the several creditor attorneys active in this case to discuss the status and

13  developments in the case."  Compensation for this duplicative work should be disallowed.

14          10.     In the "Post-Petition Operations" section of the Application, the applicant states

15  that it has been asked by the debtor to address and advise the debtor on, among other things,

16  "non-bankruptcy-specific issues arising in debtor's general business operations."  The applicant

17  further states that "CGS has routinely assisted debtor and its bookkeeping personnel in resolving

18  its monthly operating report issues and in obtaining insurance renewals."  Compensation for this

19  non-bankruptcy and administrative work should be disallowed.  This is particularly true in light

20  of the fact that the debtor, based on its monthly operating reports, is paying its "bookkeeping

21  personnel," namely Patrick Brassill, a salary in excess of $100,000 per year for his services.

22          11.     In the "Safeco/First National Litigation" section of the Application, the applicant

23  requests $33,577.50 in fees for 77 hours of work, most of which relates to the debtor's failed

24  motion for preliminary injunction against First National.  As mentioned above, and as confirmed

25  by the Court, this motion was procedurally baseless (among other defects).  Thus, all fees

26  associated with this motion should be disallowed.

27  ///

28  ///

1   DATED:  March 8, 2011          SEDGWICK, DETERT, MORAN & ARNOLD LLP

2

3
                                   By:  /s/ Joel M. Long
4                                       Joel M. Long
                                        Attorneys for Creditor
5                                       First National Insurance Company of America

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO AMENDED APPLICATION