SEDGWICK LLP
JAMES P. DIWIK (Bar No. 164016)
james.diwik@sedgwicklaw.com
JOEL M. LONG (Bar No. 226061)
joel.long@sedgwicklaw.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Creditor
First National Insurance Company of America

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

HSR GENERAL ENGINEERING CONTRACTORS, INC.,

Debtor.

Case No. 10-58737

Chapter 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDITOR FIRST NATIONAL INSURANCE COMPANY OF AMERICA'S MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT**

[Caltrans Hwy. 17 Project]

I. **INTRODUCTION**

Debtor HSR General Engineering Contractors, Inc. (the "Debtor") has failed to complete a public works construction project bonded by creditor First National Insurance Company of America ("First National"). The owner of the project, the California Department of Transportation ("Caltrans"), has demanded that First National complete the project pursuant to First National's obligations as the Debtor's performance bond surety. The Debtor has indicated that it is unable and unwilling to complete the project. Thus, First National requests that the

Debtor's contract with Caltrans for the project immediately be deemed rejected to permit First National to arrange for completion of the project.

## II. ISSUE TO BE DECIDED

Whether the contract between the Debtor and Caltrans referenced above should be immediately rejected.

## III. RELEVANT FACTS[1]

### A. The Executory Contract

In or about March 2009, the Debtor entered into a contract with Caltrans described as Contract No. 05-0P8104 (the "Contract") for a public works construction project located in Santa Cruz County described as Construct Soldier Pile Wall, etc. (the "Project"). The Project work principally involved constructing a soldier pile wall, constructing a concrete barrier, and placing HMA pavement on a stretch of State Highway 17. Under the Contract, the Debtor agreed to perform the Project work in exchange for payment by Caltrans.

### B. The Bonds

On or about March 20, 2009, First National, as surety, issued Performance Bond No. 6576823 on behalf of the Debtor, as principal, in connection with the Project (the "Performance Bond"). The Performance Bond is in the amount of $757,212.50 and names Caltrans as the bond obligee. First National, as surety, also issued Payment Bond No. 6576823 on behalf of the Debtor, as principal, in connection with the Project (the "Payment Bond"). The Payment Bond is in the amount of $1,514,425 and was issued to secure the payment of subcontractors, suppliers, and laborers on the Project.

### C. The Indemnity Agreement

On January 2, 2008, the Debtor executed a General Agreement of Indemnity for Contractors (the "Indemnity Agreement") as an inducement and in partial consideration for First

---

[1] The above facts are supported by the Declaration of Joel M. Long filed concurrently herewith, as well as the Declaration of Christine Bartholdt in support of First National's previously filed motion for relief from stay. (Document No. 29 on the Court's docket.) First National requests that the Court take judicial notice of Ms. Bartholdt's declaration.

National's issuance of surety bonds on the Debtor's behalf, including the Performance and Payment Bonds discussed above. Under the Indemnity Agreement, the Debtor agreed to indemnify and save harmless First National from any and all demands, claims, loss, and expense by reason of First National having furnished any bonds on behalf of the Debtor, again including the Performance and Payment Bonds discussed above.

### D. Status of the Project

The Debtor filed this Chapter 11 bankruptcy proceeding on August 23, 2010. At that time, the Debtor had not completed the work under the Contract, and the remaining funds under the Contract were frozen by stop notices submitted to Caltrans by the Debtor's unpaid subcontractors and suppliers on the Project. Before and since the bankruptcy filing, First National has paid the claims of multiple of the Debtor's subcontractors and suppliers under the Payment Bond in a total amount in excess of $360,000.

The remaining work under the Contract includes completion of punch list items and to remove and replace the top layer (approximately one and a half inches) of a certain stretch of roadway. The Debtor has confirmed to First National that the Debtor is unwilling and unable to complete the remaining work. Caltrans has terminated the Debtor's control of the work and demanded that First National complete the remaining work pursuant to its obligations under the Performance Bond, including the potential assessment of liquidated damages if the work is not promptly completed.

First National has reviewed the Project site, developed an estimated Contract accounting, developed an estimated cost to complete the remaining Project work, and contacted potential completion contractors. Through this process, First National estimates that there is $82,463 in potentially available Contract funds (including amounts for unpaid work items and unpaid change orders),[2] while it will cost approximately $140,000 to complete the remaining work.[3]

---

[2] The Debtor previously informed First National that the Contract balance was $148,548, but it is unclear to First National how the Debtor arrived at this amount. In any event, the estimated cost to complete the Project work, plus First National's payments to claimants under the Payment Bond, total far in excess of even the Debtor's Contract balance amount.

Completion of the remaining Project work is weather-dependent. In particular, the roadway removal and replacement cannot be performed when the overnight temperature is below a certain level. Thus, the work could not be performed during the winter or early spring months. Now, however, the weather is at a point where the work soon should be able to be performed. First National wishes to act promptly to avoid the potential consequences of further delay.

E. **First National's Attempt to Obtain a Stipulated Rejection of the Contract**

Prior to filing the instant motion, First National attempted to obtain a stipulation from the Debtor to reject the Contract. For reasons that are not clear to First National, the Debtor declined to enter into a stipulation. However, the Debtor did confirm that it does not dispute the Caltrans termination or First National's rights and responsibilities under the Performance Bond in light of the termination and Caltrans' demand for performance.

## IV. LEGAL ARGUMENT

Section 365(d)(2) of the Bankruptcy Code authorizes a bankruptcy court, upon request of a party to an executory contract, to require a Chapter 11 debtor to assume or reject the contract. The debtor must decide whether to accept or reject within a reasonable time, with reasonableness depending on the facts and circumstances of a particular case. Here, immediate rejection of the Contract is appropriate.[4]

First, immediate rejection is not only reasonable, but also is in the best interest of the estate, First National, and Caltrans. The Debtor admits that it lacks the financial and operational

---

[3] Because of the location of the Project, the roadway removal and replacement work must be performed at night and requires one of the lanes of Highway 17 to be shut down. This premium time work makes the cost to complete higher than it would be under normal working conditions, and First National's estimate takes into account this premium time.

[4] That the Contract is executory should not be disputed. As of the date of the Debtor's bankruptcy filing, considerable work remained to be performed under the Contract, and Caltrans' obligations to administer and pay for that work remained to be performed. See Griffel v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir. 1988). Further, although First National is not a signatory to the Contract, it should be considered a party for purposes of Section 365(d)(2) in light of its obligations under the Performance Bond and the Payment Bond. Alternatively, First National requests that the Court exercise its equitable powers under Section 105(d)(2)(A) of the Bankruptcy Code to find that, under the circumstances of this case, First National is a proper party to bring the instant motion.

capacity to complete the Project work, and the Debtor has confirmed that it does not dispute Caltrans' termination of the Debtor's control of the work and demand for First National to arrange for completion of the work under the Performance Bond. First National has reviewed the status of the Project and is prepared to move forward with completion of the Project. Rejection of the Contract will permit First National to finalize agreements with Caltrans and a completion contractor on the best available terms, including, if possible, use of the Contract balance to offset the cost to complete. This plan of action will mitigate First National's and Caltrans' potential loss, while also mitigating potential claims against the estate. Continued failure to complete the Project work, on the other hand, serves no useful purpose and presents the potential for increased exposure in the form of escalating prices, delay costs, and liquidated damages.

Second, the Debtor is unable to assume the Contract. In order to assume an executory contract under which a default has occurred, a Chapter 11 debtor must: (1) cure, or provide adequate assurances that the debtor will promptly cure, the default; (2) compensate, or provide adequate assurances that the debtor will promptly compensate, the other party to the executory contract for any pecuniary loss as the result of the default; and (3) provide adequate assurances of the debtor's future performance under the executory contract. 11 U.S.C. section 365(b)(1).

Here, the Debtor cannot satisfy any of these requirements. Financially, the Project is significantly under water, and the Debtor has indicated that it is looking to First National to complete the Project. Furthermore, the Debtor cannot satisfy the business judgment test with respect to the Contract, with relevant considerations in this regard including whether assumption would enhance the estate and how assumption would affect the interest of general unsecured creditors. See Robertson v. Pierce (In re Chi-Feng Huang), 23 B.R. 798, 801-02 (9th Cir.BAP 1982). Assumption of the Contract would not enhance the estate or benefit general unsecured creditors. To the contrary, the estate would be required to expend funds if the Debtor were to assume the Contract and attempt to complete the Project work. Accordingly, the Contract is properly rejected.

## V. CONCLUSION

The Debtor is not in the position to assume the Contract and has admitted the same. Thus, the Contract is properly deemed rejected, which will permit First National to arrange for completion of the Project for the benefit of both itself and the estate by mitigating its damages as a creditor of the estate, as well as any damages to Caltrans.

DATED: May 5, 2011         SEDGWICK LLP

By: /s/ Joel M. Long
Joel M. Long
Attorneys for Creditor
First National Insurance Company of America