SEDGWICK LLP
JAMES P. DIWIK (Bar No. 164016)
james.diwik@sedgwicklaw.com
JOEL M. LONG (Bar No. 226061)
joel.long@sedgwicklaw.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Creditor
First National Insurance Company of America

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

HSR GENERAL ENGINEERING CONTRACTORS, INC.,

Debtor.

Case No. 10-58737

Chapter 11

**DECLARATION OF JOEL M. LONG IN SUPPORT OF CREDITOR FIRST NATIONAL INSURANCE COMPANY OF AMERICA'S MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT**

**[Caltrans Hwy. 17 Project]**

I, Joel M. Long, declare as follows:

1. I am licensed to practice law before all courts of the State of California and before this Court, and I am an attorney with the law firm of Sedgwick LLP (formerly Sedgwick, Detert, Moran & Arnold LLP), counsel of record for creditor First National Insurance Company of America ("First National"). I am one of the attorneys who has performed legal services on First National's behalf in connection with the instant Chapter 11 bankruptcy proceeding, the associated adversary proceeding filed by debtor HSR General Engineering Contractors, Inc. (the

SF/2180664v1 -1-
LONG DEC. ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT
[CALTRANS HWY. 17 PROJECT]
Case: 10-58737 Doc# 199 Filed: 05/05/11 Entered: 05/05/11 18:09:15 Page 1 of 4

"Debtor"), and numerous matters involving construction projects on which First National, as surety, issued payment and performance bonds on behalf of the Debtor, as principal.

2. The matters stated in this declaration are of my own personal knowledge except as to those matters which are based on information and belief, and as to those matters, I am informed and believe them to be true. If called upon I could and would competently testify to all matters stated in this declaration under oath.

3. This declaration is submitted in support of First National's motion to compel the Debtor to assume or reject the Contract discussed below.

4. Based on my review of the relevant filings in the instant Chapter 11 bankruptcy proceeding and the associated adversary proceeding, as well as my substantive participation as First National's legal counsel in connection with numerous matters involving construction projects on which First National, as surety, issued payment and performance bonds on behalf of the Debtor, as principal, from approximately May 2010 through the present, my understanding is that, in or about March 2009, the Debtor entered into a contract with Caltrans described as Contract No. 05-0P8104 (the "Contract") for a public works construction project located in Santa Cruz County described as Construct Soldier Pile Wall, etc. (the "Project"). The Project work principally involved constructing a soldier pile wall, constructing a concrete barrier, and placing HMA pavement on a stretch of State Highway 17. Under the Contract, the Debtor agreed to perform the Project work in exchange for payment by Caltrans.

5. On or about March 20, 2009, First National, as surety, issued Performance Bond No. 6576823 on behalf of the Debtor, as principal, in connection with the Project (the "Performance Bond"). The Performance Bond is in the amount of $757,212.50 and names Caltrans as the bond obligee. First National, as surety, also issued Payment Bond No. 6576823 on behalf of the Debtor, as principal, in connection with the Project (the "Payment Bond"). The Payment Bond is in the amount of $1,514,425 and was issued to secure the payment of subcontractors, suppliers, and laborers on the Project.

6. On January 2, 2008, the Debtor executed a General Agreement of Indemnity for Contractors (the "Indemnity Agreement") as an inducement and in partial consideration for First National's issuance of surety bonds on the Debtor's behalf, including the Performance and Payment Bonds discussed above. Under the Indemnity Agreement, the Debtor agreed to indemnify and save harmless First National from any and all demands, claims, loss, and expense by reason of First National having furnished any bonds on behalf of the Debtor, again including the Performance and Payment Bonds discussed above.

7. Based on the same background described in Paragraph 4 above, as well as my communications with the Debtor's counsel, my understanding is that the Debtor filed this Chapter 11 bankruptcy proceeding on August 23, 2010. At that time, the Debtor had not completed the work under the Contract, and the remaining funds under the Contract were frozen by stop notices submitted to Caltrans by the Debtor's unpaid subcontractors and suppliers on the Project.

8. Before and since the bankruptcy filing, First National has paid the claims of the Debtor's subcontractors and suppliers under the Payment Bond in a total amount in excess of $360,000.

9. Based on the same background described in Paragraph 4 above, as well as my communications with the Debtor's counsel, my understanding is that the remaining work under the Contract includes completion of punch list items and to remove and replace the top layer (approximately one and a half inches) of a certain stretch of roadway.

10. Caltrans has terminated the Debtor's control of the work and demanded that First National complete the remaining work pursuant to its obligations under the Performance Bond, including the potential assessment of liquidated damages if the work is not promptly completed. Based on my communications with the Debtor's counsel, my understanding is that the Debtor is unwilling and unable to complete the remaining work.

11. First National has retained a construction consultant, Sage Associates, Inc. ("Sage"), in connection with the Project. First National, through Sage, has reviewed the Project

site, developed an estimated Contract accounting, developed an estimated cost to complete the remaining work, and contacted potential completion contractors. Through this process, First National estimates that there is $82,463 in potentially available Contract funds (including amounts for unpaid work items and unpaid change orders), while it will cost approximately $140,000 to complete the remaining Project work.

12. Based on the same background described in Paragraph 4 above, as well as my communications with the Debtor's counsel, my understanding is that completion of the remaining Project work is weather-dependent. In particular, the roadway removal and replacement cannot be performed when the overnight temperature is below a certain level.

13. Prior to filing the instant motion, First National attempted to obtain a stipulation from the Debtor to reject the Contract. For reasons that are not clear to First National, the Debtor declined to enter into a stipulation. However, the Debtor, through counsel, did confirm that the Debtor does not dispute the Caltrans termination or First National's rights and responsibilities under the Performance Bond in light of the termination and Caltrans' demand for performance.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, 2011.

/s/ Joel M. Long
Joel M. Long

SF/2180664v1                                          -4-
LONG DEC. ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT
[CALTRANS HWY. 17 PROJECT]
Case: 10-58737   Doc# 199   Filed: 05/05/11   Entered: 05/05/11 18:09:15   Page 4 of 4