SEDGWICK LLP
JAMES P. DIWIK (Bar No. 164016)
james.diwik@sedgwicklaw.com
JOEL M. LONG (Bar No. 226061)
joel.long@sedgwicklaw.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Creditor
First National Insurance Company of America

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>HSR GENERAL ENGINEERING CONTRACTORS, INC.,<br><br>Debtor. | Case No. 10-58737<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDITOR FIRST NATIONAL INSURANCE COMPANY OF AMERICA'S MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS**<br><br>[Coyote Point and Jacques Gulch Projects] |

### I. INTRODUCTION

Debtor HSR General Engineering Contractors, Inc. (the "Debtor") has failed to complete the work under two executory construction contracts for two public works construction projects. Creditor First National Insurance Company of America ("First National") issued performance and payment bonds on the Debtor's behalf in connection with those projects. As of the date that the Debtor filed its Chapter 11 bankruptcy petition, work remained to be performed under both of the contracts, and work remains to be performed as of the date of this motion. The Debtor has

ceased work on and effectively abandoned the projects, constituting a default under the contracts, and the Debtor lacks the financial and operational capacity to promptly assume and fully perform the contracts. Accordingly, First National requests an order deeming the contracts rejected, granting relief from the automatic stay as necessary, and enabling First National to take appropriate action to relet or otherwise arrange for completion of the projects.

## II. ISSUE TO BE DECIDED

Whether the executory construction contracts discussed above should be immediately rejected.

## III. RELEVANT FACTS[1]

### A. The Coyote Point Project

#### 1. The Executory Contract

In or about August 2009, the Debtor entered into a contract with the County of San Mateo (the "Coyote Point Contract") for a public works construction project described as Coyote Point Bay Trail Improvements (Project No. E4861000) (the "Coyote Point Project"). Under the Contract, the Debtor agreed to perform the project work in exchange for payment by the County of San Mateo (the "County").

#### 2. The Bonds

On or about August 25, 2009, First National, as surety, issued Performance Bond No. 6633459 on behalf of the Debtor, as principal, in connection with the Coyote Point Project (the "Coyote Point Performance Bond"). The Coyote Point Performance Bond is in the amount of $720,173 and names the County as the bond obligee. First National, as surety, also issued Payment Bond No. 6633459 on behalf of the Debtor, as principal, in connection with the Coyote Point Project (the "Coyote Point Payment Bond"). The Coyote Point Payment Bond is in the amount of $720,173 and was issued to secure the payment of subcontractors, suppliers, and

---

[1] The above facts are supported by the Declaration of Joel M. Long filed concurrently herewith, as well as the Declaration of Christine Bartholdt in support of First National's previously filed motion for relief from stay. (Document No. 29 on the Court's docket.) First National requests that the Court take judicial notice of Ms. Bartholdt's declaration.

SF/2181751v1 -2-
MPA ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS [COYOTE POINT AND JACQUES GULCH PROJECTS]

Case: 10-58737  Doc# 203  Filed: 05/06/11  Entered: 05/06/11 18:08:42  Page 2 of 6

laborers on the Coyote Point Project.

### 3. Status of the Coyote Point Project

The Debtor filed this Chapter 11 bankruptcy proceeding on August 23, 2010. At that time, the Debtor had not completed the work under the Coyote Point Contract, and some or all of the remaining funds under the Coyote Point Contract were frozen by stop notices submitted to the County by the Debtor's unpaid subcontractors and suppliers on the project. Before and since the bankruptcy filing, First National has paid the claims of multiple of the Debtor's subcontractors and suppliers under the Coyote Point Payment Bond in a total amount in excess of $220,000.

The remaining work under the Coyote Point Contract includes completion of 22 punch list items, and potentially additional work. The Debtor has confirmed to First National that the Debtor is unable to complete the remaining work, and the County has demanded that First National complete the remaining work pursuant to its obligations under the Coyote Point Performance Bond. To date, First National has been unable to inspect the punch list items at the project site to determine the estimated cost to complete the work or to determine whether there is any remaining work in addition to the 22 punch list items.

## B. The Jacques Gulch Project

### 1. The Executory Contract

On or about April 29, 2009, the Debtor entered into a contract with the Santa Clara Valley Water District (the "Jacques Gulch Contract") for a public works construction project described as Jacques Gulch Restoration Project (the "Jacques Gulch Project"). Under the Jacques Gulch Contract, the Debtor agreed to perform the project work in exchange for payment by the Santa Clara Valley Water District (the "District").

### 2. The Bonds

On or about May 21, 2009, First National, as surety, issued Performance Bond No. 6576833 on behalf of the Debtor, as principal, in connection with the Jacques Gulch Project (the "Jacques Gulch Performance Bond"). The Jacques Gulch Performance Bond is in the amount of

$1,877,809 and names the County of San Mateo as the bond obligee. First National, as surety, also issued Payment Bond No. 6576833 on behalf of the Debtor, as principal, in connection with the Jacques Gulch Project (the "Jacques Gulch Payment Bond"). The Coyote Point Payment Bond is in the amount of $1,877,809 and was issued to secure the payment of subcontractors, suppliers, and laborers on the Jacques Gulch Project.

### 3. Status of the Jacques Gulch Project

As of the date of the Debtor's bankruptcy filing on August 23, 2010, the Debtor had not completed the work under the Jacques Gulch Contract, and some portion of the remaining funds under the Jacques Gulch Contract were frozen by stop notices submitted to the District by the Debtor's unpaid subcontractors and suppliers on the project. Before and since the bankruptcy filing, First National has paid the claims of multiple of the Debtor's subcontractors and suppliers under the Jacques Gulch Payment Bond in a total amount in excess of $122,000.

The District recently informed First National that, subject to a confirmatory site inspection by District personnel, the District considers the Jacques Gulch Project to be substantially complete (i.e., major components of the work are finished, although there may be minor punch list items to be completed), <u>other than</u> the 36-month landscape maintenance period required under the Jacques Gulch Contract that runs until approximately December 2012. To date, through an ongoing series of claims and payments by First National under the Jacques Gulch Payment Bond, the landscape maintenance company originally hired by the Debtor has continued to perform the monthly landscape maintenance work even though the Debtor has effectively abandoned the project. Once the Jacques Gulch Contract is rejected, First National will be in a position to enter into an agreement with the landscape maintenance company to ratify its obligations under its prior contract with the Debtor and ensure that the landscape maintenance work is completed in its entirety.

### D. The Indemnity Agreement

On January 2, 2008, the Debtor executed a General Agreement of Indemnity for Contractors (the "Indemnity Agreement") as an inducement and in partial consideration for First

SF/2181751v1 -4-
MPA ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS [COYOTE POINT AND JACQUES GULCH PROJECTS]

Case: 10-58737  Doc# 203  Filed: 05/06/11  Entered: 05/06/11 18:08:42  Page 4 of 6

National's issuance of surety bonds on the Debtor's behalf, including the performance and payment bonds discussed above. Under the Indemnity Agreement, the Debtor agreed to indemnify and save harmless First National from any and all demands, claims, loss, and expense by reason of First National having furnished any bonds on behalf of the Debtor, again including the performance and payment bonds discussed above.

## IV. LEGAL ARGUMENT

Section 365(d)(2) of the Bankruptcy Code authorizes a bankruptcy court, upon request of a party to an executory contract, to require a Chapter 11 debtor to assume or reject the contract. The debtor must decide whether to accept or reject within a reasonable time, with reasonableness depending on the facts and circumstances of a particular case. Here, immediate rejection of the Coyote Point and Jacques Gulch Contracts (collectively, the "Contracts") is appropriate.[2]

First, the Debtor has had more than sufficient time to assume and complete the Contracts, but has failed to do so. Further, the Debtor has indicated that it lacks the financial capacity to complete the work on the Coyote Point Project, and the Debtor has made no effort to ensure the performance of the monthly landscape maintenance work on the Jacques Gulch Project. Rejection of the Contracts will permit First National to accurately ascertain the remaining work under the Coyote Point Contract and, thereafter, arrange for the completion of that work on the best available terms. Rejection of the Contracts will also permit First National to assume control and ensure the completion of the required monthly landscape maintenance on the Jacques Gulch Project, which First National has been unable to do to date in light of the Debtor's bankruptcy. This plan of action will mitigate the potential loss of First National and the project owners and minimize claims against the estate. Thus, the relief sought by First National is in the best

---

[2] That the Contracts are executory should not be disputed. As of the date of the Debtor's bankruptcy filing, considerable work remained to be performed under both Contracts, along with the project owners' respective obligations to administer and pay for that work. See Griffel v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir. 1988). Further, although First National is not a signatory to the Contracts, it should be considered a party for purposes of Section 365(d)(2) in light of its obligations under its performance and payment bonds. Alternatively, First National requests that the Court exercise its equitable powers under Section 105(d)(2)(A) of the Bankruptcy Code to find that, under the circumstances of this case, First National is a proper party to bring the instant motion.

SF/2181751v1 -5-
MPA ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS [COYOTE POINT AND JACQUES GULCH PROJECTS]

Case: 10-58737   Doc# 203   Filed: 05/06/11   Entered: 05/06/11 18:08:42   Page 5 of 6

interests of the estate.

Second, the Debtor is unable to assume the Contracts. In order to assume an executory contract under which a default has occurred, a Chapter 11 debtor must: (1) cure, or provide adequate assurances that the debtor will promptly cure, the default; (2) compensate, or provide adequate assurances that the debtor will promptly compensate, the other party to the executory contract for any pecuniary loss as the result of the default; and (3) provide adequate assurances of the debtor's future performance under the executory contract. 11 U.S.C. section 365(b)(1).

Here, the Debtor cannot satisfy any of these requirements. There is no evidence that the Debtor, whether financially, operationally, or otherwise, has the capacity to cure its defaults under the Contracts (i.e., failure to perform work, failure to pay subcontractors and suppliers) or provide adequate assurance of promptly completing the Contracts. Indeed, as mentioned above, the Debtor has confirmed to First National that the debtor is financially unable to complete the Coyote Point Project, and the Debtor has made no effort to ensure the performance of the monthly landscape maintenance work on the Jacques Gulch Project, which is necessary to obtain final completion of that project. Accordingly, both Contracts are properly rejected.

## V. **CONCLUSION**

For the reasons stated above, First National respectfully requests that the Court deem the Contracts rejected, grant relief from the automatic stay as necessary, and permit First National to take appropriate action to relet or otherwise arrange for completion of the projects.

DATED: May 6, 2011        SEDGWICK LLP

By: /s/ Joel M. Long
Joel M. Long
Attorneys for Creditor
First National Insurance Company of America

SF/2181751v1                                -6-
MPA ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS
[COYOTE POINT AND JACQUES GULCH PROJECTS]

Case: 10-58737   Doc# 203   Filed: 05/06/11   Entered: 05/06/11 18:08:42   Page 6 of 6