SEDGWICK LLP
JAMES P. DIWIK (Bar No. 164016)
james.diwik@sedgwicklaw.com
JOEL M. LONG (Bar No. 226061)
joel.long@sedgwicklaw.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Creditor
First National Insurance Company of America

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

HSR GENERAL ENGINEERING
CONTRACTORS, INC.,

Debtor.

Case No. 10-58737

Chapter 11

**DECLARATION OF JOEL M. LONG IN SUPPORT OF CREDITOR FIRST NATIONAL INSURANCE COMPANY OF AMERICA'S MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS**

[Coyote Point and Jacques Gulch Projects]

I, Joel M. Long, declare as follows:

1. I am licensed to practice law before all courts of the State of California and before this Court, and I am an attorney with the law firm of Sedgwick LLP (formerly Sedgwick, Detert, Moran & Arnold LLP), counsel of record for creditor First National Insurance Company of America ("First National"). I am one of the attorneys who has performed legal services on First National's behalf in connection with the instant Chapter 11 bankruptcy proceeding, the associated adversary proceeding filed by debtor HSR General Engineering Contractors, Inc. (the

SF/2181871v1
-1-
LONG DEC. ISO MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS
[COYOTE POINT AND JACQUES GULCH PROJECTS]
Case: 10-58737   Doc# 204   Filed: 05/06/11   Entered: 05/06/11 18:40:28   Page 1 of 8

"Debtor"), and numerous matters involving construction projects on which First National, as surety, issued payment and performance bonds on behalf of the Debtor, as principal.

2. The matters stated in this declaration are of my own personal knowledge except as to those matters which are based on information and belief, and as to those matters, I am informed and believe them to be true. If called upon I could and would competently testify to all matters stated in this declaration under oath.

3. This declaration is submitted in support of First National's motion to compel the Debtor to assume or reject the Coyote Point and Jacques Gulch Contracts discussed below.

4. Based on my review of the relevant filings in the instant Chapter 11 bankruptcy proceeding and the associated adversary proceeding, as well as my substantive participation as First National's legal counsel in connection with numerous matters involving construction projects on which First National, as surety, issued payment and performance bonds on behalf of the Debtor, as principal, from approximately May 2010 through the present, my understanding is that in or about August 2009, the Debtor entered into a contract with the County of San Mateo (the "Coyote Point Contract") for a public works construction project described as Coyote Point Bay Trail Improvements (Project No. E4861000) (the "Coyote Point Project"). Under the Contract, the Debtor agreed to perform the project work in exchange for payment by the County of San Mateo (the "County").

5. On or about August 25, 2009, First National, as surety, issued Performance Bond No. 6633459 on behalf of the Debtor, as principal, in connection with the Coyote Point Project (the "Coyote Point Performance Bond"). The Coyote Point Performance Bond is in the amount of $720,173 and names the County as the bond obligee. First National, as surety, also issued Payment Bond No. 6633459 on behalf of the Debtor, as principal, in connection with the Coyote Point Project (the "Coyote Point Payment Bond"). The Coyote Point Payment Bond is in the amount of $720,173 and was issued to secure the payment of subcontractors, suppliers, and laborers on the Coyote Point Project.

6. Based on the same background described in Paragraph 4 above, as well as my communications with the Debtor's counsel, my understanding is that the Debtor filed this Chapter 11 bankruptcy proceeding on August 23, 2010. At that time, the Debtor had not completed the work under the Coyote Point Contract, and some or all of the remaining funds under the Coyote Point Contract were frozen by stop notices submitted to the County by the Debtor's unpaid subcontractors and suppliers on the project.

7. Before and since the bankruptcy filing, First National has paid the claims of multiple of the Debtor's subcontractors and suppliers under the Coyote Point Payment Bond in a total amount in excess of $220,000.

8. Based on the same background described in Paragraph 4 above, as well as my communications with the Debtor's counsel, the remaining work under the Coyote Point Contract includes completion of 22 punch list items, and potentially additional work. A true and correct copy of the punch list provided by HSR's counsel to First National on December 21, 2010 is attached hereto as <u>Exhibit A</u>.

9. More recently, on March 11, 2011, the Debtor's counsel confirmed that the Debtor was unable to complete the remaining work on the Coyote Point Project due to weather issues and a lack of funding.

10. The County has demanded that First National complete the remaining work pursuant to its obligations under the Coyote Point Performance Bond.

11. To date, First National has been unable to inspect the punch list items at the project site to determine the estimated cost to complete the work or to determine whether there is any remaining work in addition to the 22 punch list items.

12. Based on the same background described in Paragraph 4 above, my understanding is that, on or about April 29, 2009, the Debtor entered into a contract with the Santa Clara Valley Water District (the "Jacques Gulch Contract") for a public works construction project described as Jacques Gulch Restoration Project (the "Jacques Gulch Project"). Under the Jacques Gulch Contract, the Debtor agreed to perform the project work in exchange for payment by the Santa

Clara Valley Water District (the "District").

13. On or about May 21, 2009, First National, as surety, issued Performance Bond No. 6576833 on behalf of the Debtor, as principal, in connection with the Jacques Gulch Project (the "Jacques Gulch Performance Bond"). The Jacques Gulch Performance Bond is in the amount of $1,877,809 and names the County of San Mateo as the bond obligee. First National, as surety, also issued Payment Bond No. 6576833 on behalf of the Debtor, as principal, in connection with the Jacques Gulch Project (the "Jacques Gulch Payment Bond"). The Coyote Point Payment Bond is in the amount of $1,877,809 and was issued to secure the payment of subcontractors, suppliers, and laborers on the Jacques Gulch Project.

14. Based on the same background described in Paragraph 4 above, as well as my communications with the Debtor's counsel, my understanding is that, as of the date of the Debtor's bankruptcy filing on August 23, 2010, the Debtor had not completed the work under the Jacques Gulch Contract, and some portion of the remaining funds under the Jacques Gulch Contract were frozen by stop notices submitted to the District by the Debtor's unpaid subcontractors and suppliers on the project.

15. Before and since the bankruptcy filing, First National has paid the claims of multiple of the Debtor's subcontractors and suppliers under the Jacques Gulch Payment Bond in a total amount in excess of $122,000.

16. Recently, on or about March 30, 2011, the District informed First National that, subject to a confirmatory site inspection by District personnel, the District considers the Jacques Gulch Project to be substantially complete, other than the 36-month landscape maintenance period required under the Jacques Gulch Contract that runs until approximately December 2012.

17. To date, through an ongoing series of claims and payments by First National under the Jacques Gulch Payment Bond, the landscape maintenance company originally hired by the Debtor has continued to perform the monthly landscape maintenance work.

18. On January 2, 2008, the Debtor executed a General Agreement of Indemnity for Contractors (the "Indemnity Agreement") as an inducement and in partial consideration for First

National's issuance of surety bonds on the Debtor's behalf, including the performance and payment bonds discussed above. Under the Indemnity Agreement, the Debtor agreed to indemnify and save harmless First National from any and all demands, claims, loss, and expense by reason of First National having furnished any bonds on behalf of the Debtor, again including the performance and payment bonds discussed above.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of May, 2011.

/s/ Joel M. Long
Joel M. Long

# EXHIBIT A

# Final Punch List for Coyote Point Bay Trail Improvements Project

## Lat Updated: 8/13/2010

1. Base Rock- Fill with base rock and compact shoulder through out Project

2. Clean AC & debris dumped on the shoulder through out Project

3. Ramp Grade- At various locations, AC grade should match ramp grade

4. Per Design Plans, grade & compact areas at shoulder and beyond along trail through out Project

5. Mortar catch basins & curb inlets at Beach Access intersection.

6. Curb & Gutter- Repair all damaged curb & gutter, due to construction, through out the Project

7. Various shoulder areas have marifi material protruding out. Cut access material as agreed upon in the field

8. AT&T Box- Replace/fix damaged, by HSR, AT&T box at Museum

9. AB shoulders along trail should be 2 feet wide, flush with AC. Fix shoulder areas less than 2 feet wide

10. Repair AC cracks and pot holes along trail through out Project

11. Northerly trail near Magic Mountain playground trail transition is not at 2% cross slope and not the correct transition grades, causing drainage problems. Fix as originally instructed by County prior to paving

12. Mortar back of slotted PCC curb and gutter @ Northern end

13. Place Traffic signs per plan. Stop sign at Magic Mtn. Int. and two speed limit signs at the locations designated per plan

14. Stationary bollards used in place of removable bollards 2 Ea. Give back keys and remaining pad locks

15. Repair ADA Ramp Truncated domes located near the Marina on Coyote Point Dr., by ship anchor display

16. Conform AC on roadway at easterly return of Museum Int.

17. Repair damaged AC pavement, due to HSR construction activities, in parking area of rifle & pistol range and most southerly trail gate entrance at Coyote Point Dr

18. Clean all debris from catch basin's & inlets, remove all marifi filter material from grates

19. Power wash/clean all emulsion stains at PCC curb and gutter through out Project

20. Bring stockpiling area, located at most southerly trail, to its original grading condition, by grading to drain into existing drain inlets

21. Slurry Seal- Cut down edges of slurry seal along southerly trail that were identified as tripping hazards during the walk through

22. Compact soil to 95% compaction behind Retaining Wall No. 2

F:\users\const\_2009-2010 Construction Projects\Coyote Point Bay Trail Improvements\Project Closing\Final Punch List Items 8-13-2010.doc

Case: 10-58737    Doc# 204    Filed: 05/06/11    Entered: 05/06/11 18:10:28    Page 8 of 8