Wm. Thomas Lewis, Esq. (California State Bar No. 116695)
**ROBERTSON & LEWIS**
An Association of Attorneys
10 Almaden Boulevard, Suite 500
San Jose, CA 95113-2375
Telephone: (408) 294-3600

Attorneys for Secured Creditor
Heritage Bank of Commerce

UNITED STATES BANKRUPTCY COURT
Northern District

| | |
|---|---|
| In re:<br><br>HSR GENERAL ENGINEERING CONTRACTORS, INC.,<br><br>Debtor. | Case No. 10-58737<br><br>CHAPTER 11<br><br>SECURED CREDITOR'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR LIMITED USE OF CASH COLLATERAL AND FOR DETERMINATION OF NATURE AND EXTENT OF CASH COLLATERAL<br><br>Date: June 13, 2011<br>Time: 11:00 a.m.<br>Judge: Hon. Charles Novak |

Secured Creditor **HERITAGE BANK OF COMMERCE** (the "Secured Creditor") hereby opposes the Emergency Motion for Limited Use of Cash Collateral and for Determination of Nature and Extent of Cash Collateral (the "Motion") filed by debtor **HSR GENERAL ENGINEERING CONTRACTORS, INC.** (the "Debtor") as follows:

A.  **FACTS**

The facts are substantially as recited in Sections II.A-D of Debtor's Motion. In Section II.E of Debtor's Motion, however, Debtor states that Secured Creditor froze the debtor-in-possession accounts (the "DIP Accounts") based upon a mere allegation that Debtor had failed to make certain adequate protection payments, insinuating that such payments were not in fact delinquent. As confirmed by the declaration of Kevin Knox filed herewith (the "Knox Declaration"), Debtor is in default under the Stipulation for Use of Cash Collateral and for Adequate Protection on file a docket no. 46[1] (the "Cash Collateral Stipulation") by failing to make the adequate protection payments due

---

[1] An order adopting and approving of the Cash Collateral Stipulation is on file as docket no. 63.

for April and May of this year. As admitted by Section II.E of the Motion, and as confirmed by the declaration of Wm. Thomas Lewis filed and served herewith (the "Lewis Declaration"), a notice of such default (the "Notice of Default") respecting such missed payments was sent via e-mail dated June 1, 2011 from Secured Creditor's counsel and was received by Debtor's counsel on June 2, 2011, a copy of which is attached to the Lewis Declaration. As further confirmed by Lewis Declaration, and in accordance with Section 1.c.vii of the Cash Collateral Stipulation, the Notice of Default further advised and notified Debtor that Debtor's right to use Secured Creditor's cash collateral was thus terminated, that Secured Creditor had frozen the DIP Accounts, and that Secured Creditor would thereafter cease honoring checks drawn on the DIP Accounts.

As further confirmed by Lewis and Knox Declarations, at no point did Debtor dispute that it was in default under the Cash Collateral Stipulation and the Motion itself does not assert that no such default exists and is continuing.

**B.     ARGUMENT**

*1.     Debtor's Default Terminated its Right to Use Cash Collateral under the Cash Collateral Stipulation.*

The Code recognizes that Debtor may use and consume Secured Creditor's cash collateral, only if Secured Creditor consents to such use or Secured Creditor's interest in same is adequately protected. 11 U.S.C. §363(e).

In October of 2010, Secured Creditor and Debtor consented to Debtor's use of Secured Creditor's cash collateral in accordance with the Cash Collateral Stipulation. Section 1.c.vii of the Cash Collateral Stipulation provides as follows:

> Term of Stipulation. Following the entry of the Order, *this Stipulation shall remain in effect until (1) terminated by an event of default by the provisions of this Stipulation* (2) if no event of default, fifteen (15) days written notice by either party of their intent to terminate this Stipulation. If Secured Creditor is granted relief from stay to foreclose on its security in the Collateral (whether entered into on the basis of a stipulation between Debtor and Secured Creditor or otherwise), this Stipulation shall automatically expire and terminate. *Emphasis added*.

Accordingly, on Debtor's failure to make the adequate protection payments specified by the Cash Collateral Stipulation, Debtor defaulted under the Cash Collateral Stipulation and Debtor's right to use Secured Creditor's cash collateral automatically terminated.

ROBERTSON & LEWIS
150 Almaden Blvd
Suite 950
San Jose, CA
95113
(408) 294-3600

2

Case: 10-58737    Doc# 219    Filed: 06/11/11    Entered: 06/11/11 20:06:03    Page 2 of 5

As confirmed by the Knox Declaration (and the related e-mail exhibit) and Section II.E of the Motion, Debtor and Secured Creditor had been in extensive communications in some attempt to reach a global resolution of the obligations owing by Debtor to Secured Creditor. During those communications, Secured Creditor made regular and repeated written demands for Debtor to make past due adequate protection payments that were owing. As further confirmed by the Knox Declaration, in a telephone conference with Debtor's principal and guarantor Keith Dorsa on or about May 23, Mr. Dorsa advised Secured Creditor that Debtor was not going to make any further adequate protection payments, until the parties reached a global settlement of all obligations, including the release of Mr. Dorsa from his contingent guarantor liabilities respecting Debtor's obligations owing to Secured Creditor.

As such, Debtor's failure to make the adequate protection payments was not merely the result of oversight or cash flow difficulties, but was part of an intentional plan to withhold payment of same in order to pressure Secured Creditor into making an overall settlement with Debtor and to release non-Debtor parties from continuing liability to Secured Creditor.

While Debtor now presents a litany of horribles if the freeze on the DIP Accounts resulting from Debtor's payment defaults is honored and Debtor's outstanding checks are not honored, the plain fact is the payees are unsecured claimants. Absent consent by Secured Creditor, Debtor is authorized to use Secured Creditor's cash collateral only if Secured Creditor's interest in same is adequately protected. Debtor has already stipulated and agreed under Section 1.d of the Cash Collateral Stipulation that adequate protection of Secured Creditor's interest requires monthly payments of $25,000 per month. Debtor has not cited any authority that incurring "the wrath of its employees and contractors" legally justifies using Secured Creditor's cash collateral without making the stipulated and agreed adequate protection payments or otherwise demonstrating that Secured Creditor interest is adequately protected. Requiring Secured Creditor to honor the outstanding trade and other unsecured creditor payments without adequately protecting Secured Creditor's interest in its cash collateral essentially elevates trade debt and other unsecured obligations above Secured Creditor's rights in and to its collateral.

Further, Debtor has not shown that Secured Creditor will be adequately protected notwithstanding Debtor's use of Secured Creditor's cash collateral in accordance with the Motion.

Debtor has not established that (i) it will generate net accounts receivable (that is, accounts net of operating costs required to generate same) from such use of Secured Creditor's cash collateral that are of collectable quality and that equal or exceed the cash collateral so consumed, (ii) such accounts will be paid and collectable within a reasonable period of time, and (iii) that such accounts will be free and clear of any adverse claims (including, without limitation, claims of bonding companies of other third parties).

### 2. *The Segregated Account Containing the Proceeds of the Sale of Titled Vehicles and Other Assets on Which Secured Creditor Did Not Previously Have a Perfected Lien Is Subject to Secured Creditor's Replacement Lien.*

Section 3.c.iii of the Cash Collateral Stipulation grants Secured Creditor aa replacement lien, as follows:

> Replacement Lien. Heritage is granted a replacement lien, effective as of August 23, 2010, upon *all presently owned and hereafter acquired* assets of the Debtor, including accounts receivable, *to the same extent, priority and validity as existed on the Petition date*. Emphasis added.

As confirmed by the Commercial Security Agreements and Financing Statements attached to the Knox Declaration, Secured Creditor had a pre-petition lien on (among other things) all presently owned and hereafter acquired Deposit Accounts.

Here, all DIP Accounts were opened after the petition date, constitute collateral under the "after-acquired" clause in the Security Agreements and Section 3.c.iii of the Cash Collateral Stipulation, and thus constitute security for Debtor's obligations owing to Secured Creditor.

The Cash Collateral Stipulation does not reflect any tracing or other requirement limiting the replacement lien to only sums in such deposit accounts that constitute proceeds of other collateral in which Secured Creditor had a perfected lien. Instead, the replacement lien on deposit accounts is a separate and distinct lien. Thus, since Debtor voluntarily agreed by Section II.E of the Stipulation for Sale of Personal Property ... Free and Clear of Liens and for Payment Related Sales Expenses (the "Sale Stipulation") and related order that proceeds from the sale of non-collateral vehicles would be deposited into the DIP Account, Debtor agreed to subject same to Secured Creditor's lien.

Further, in Section 1.c.ii of the Cash Collateral Stipulation, Debtor acknowledged and agreed that "*all cash of the bankruptcy estate* and all proceeds of the Debtor's accounts receivable,

ROBERTSON & LEWIS
150 Almaden Blvd.
Suite 950
San Jose, CA
95113
(408) 294-3600

equipment and inventory are cash collateral subject to Heritage's security interest." Section 1.c.ii of the Cash Collateral Stipulation did not provide that cash of the bankruptcy constitutes cash collateral *only to the extent* same constituted proceeds of other items of Secured Creditor's collateral; instead, Section 1.c.ii was an acknowledgment of such security interest without limitation. Section 1.c.ii of the Cash Collateral Stipulation was not limited to proceeds of the sale of equipment in which Secured Creditor had a perfected lien, but was broader and included proceeds of all equipment, without limitation. Since the Cash Collateral Stipulation was drafted by Debtor, any ambiguities regarding same should be construed against Debtor.

## C. CONCLUSION

For the foregoing reasons, Secured Creditor respectfully requests that this court find that Debtor defaulted in its obligations under the Cash Collateral Stipulation and that consequently Debtor's right to use Secured Creditor's cash collateral is thereby terminated, that this court deny Debtor's emergency request to use Secured Creditor's cash collateral, and that this court find that all deposit accounts maintained by Debtor with Secured Creditor (including, without limitation, any DIP Accounts) are and remain subject to a lien in favor of Secured Creditor.

Dated: June 11, 2011
**ROBERTSON & LEWIS**

By: /s/ *Wm. Thomas Lewis*
Wm. Thomas Lewis
Attorneys for Secured Creditor
Heritage Bank of Commerce

D:\CLIENTS\0510 - Heritage Bank\099 - HSR\Bankruptcy\Emergency Motion re Cash Collateral June 2011\Opposition.wpd

ROBERTSON & LEWIS
150 Almaden Blvd.
Suite 950
San Jose, CA
95113
(408) 294-3600