CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
GREGORY J. CHARLES, #208583
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:    (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

HSR GENERAL ENGINEERING
CONTRACTORS INC,

            Debtor.

Case No. 10-58737

CHAPTER 11

**SUPPLEMENTAL DECLARATION OF MICHAEL DORSA RE: MOTION TO APPROVE STIPULATION FOR USE OF CASH COLLATERAL**

Date: July 27, 2011
Time: 2:00 p.m.
Location:
   United States Bankruptcy Court
   280 S. First St.
   San Jose, CA 95113

I, Michael Dorsa, do hereby declare:

1. I am an employee of HSR GENERAL ENGINEERING CONTRACTORS INC ("Debtor" or "HSR"). On July 22, 2011 the court entered an order appointing me as Debtor's new responsible individual (Docket # 232). I am authorized by HSR to make this declaration on behalf of HSR

2. As part of my duties with the Debtor I am familiar with all aspects of the Debtor's operation and business. I submit this declaration of my own personal knowledge except as to those matters upon which I am informed and believe and as to those matters I am informed and believe them to be true. If called to testify as to the matters stated herein I could do so in an honest and competent manner.

---

DECLARATION OF MICHAEL DORSA RE: MOTION TO APPROVE STIPULATION FOR USE OF CASH COLLATERAL

3. This declaration is submitted as part of the Debtor's MOTION TO APPROVE STIPULATION FOR USE OF CASH COLLATERAL pursuant to Bankruptcy Code Sections 361 and 363 and Federal Rule of Bankruptcy Procedure Rule 4001(b)-(d) for use of cash collateral and to compromise controversy.

4. On July 21 and 22 Debtor filed a Notice of Motion To Approve Stipulation for Use of Cash Collateral, Motion To Approve Stipulation for Use of Cash Collateral, and Declaration of Michael Dorsa Re: Motion To Approve Stipulation for Use of Cash Collateral (collectively Docket 229 and 231). The Notice (page 5, paragraph 4, line 9), the Motion (page 6, paragraph 4, line 2), and the Declaration (page 5, paragraph 15. 4., line 9) contain the same typographical error in that the payment figure should be $615 per month and not $1,047.34. The correct figure of $615.00 per month is set forth in the underlying stipulation and forbearance agreement.

5. Attached hereto and to the Motion as Exhibit A is a true and correct copy of the Forbearance Agreement between Debtor and Heritage and guarantors of the referenced obligations between Debtor and Heritage. A fully executed version should be available soon.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Jose, California, on July 25, 2011.

/s/ Michael Dorsa
Michael Dorsa

*Michael Dorsa* (signature)

---

DECLARATION OF MICHAEL DORSA RE: MOTION TO APPROVE STIPULATION FOR USE OF CASH COLLATERAL

# EXHIBIT A

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (the "Agreement") is made and entered into on July 21, 2011 between **HERITAGE BANK OF COMMERCE**, a California banking corporation (the "Lender"), and **HSR ENGINEERING CONTRACTORS, INC.**, a California corporation and sometimes doing business as HSR, Inc. (the "Debtor"), and **ROSS KEITH DORSA**, individually and as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated November 15, 2002 ("Keith Dorsa") and **KATHERINE DORSA**, individually and as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated November 15, 2002 ("Katherine Dorsa").

## RECITALS

This Agreement is made with reference to the following:

A. Debtor is indebted to Lender in connection with that certain revolving line of credit loan in the original maximum principal amount of $500,000 and denoted as Lender's loan no. 3689000101 (the "Revolving Loan"). The Revolving Loan is evidenced by (among other things) the following (the "Revolving Loan Documents"): a Promissory Note in the original amount of $500,000 and dated July 22, 2005, a Business Loan Agreement dated April 24, 2008 (and related Exhibit), a Commercial Security Agreement dated September 12, 2007, various other documents, certificates and agreements respecting the Revolving Loan, certain related documents executed and delivered in connection therewith, and various Change in Terms Agreements and other documents associated with all extensions, renewals, modifications and amendments of the foregoing. Lender's lien in the collateral securing the Revolving Loan was perfected by (among other things) the filing of a UCC Financing and Continuation Statements with the California Secretary of State. The Revolving Loan Documents modified and amended certain other loan documents executed in connection with earlier versions of the Revolving Loan (the "Prior Loan Documents").

B. Concurrently with the execution and delivery of the Revolving Loan Documents and/or the Prior Loan Documents, as part of the same transaction, and for good and valuable consideration, Keith Dorsa (individually) and Katherine Dorsa (individually) executed and delivered to Lender Commercial Guaranties, each dated September 12, 2007 (as same were from time to time modified, amended, and/or or reaffirmed, the "Revolving Loan Guaranties") and a Subordination Agreement dated June 27, 2006 (as same were from time to time modified, amended, and/or or reaffirmed, the "Subordination Agreement") by which all Debtor's then existing and thereafter arising debts and other obligations owing by Debtor to Keith Dorsa were subordinated to then existing or thereafter arising debts and other obligations owing by Debtor to Lender.

C. Debtor is also indebted to Lender in connection with that certain United States Small Business Administration Section 7(A) term loan in the original principal amount of

$1,470,000 and denoted as Lender's loan no. 6866000100 and SBA loan no. PLP 7AG3805545001 (the "SBA Term Loan"). The SBA Term Loan is evidenced by (among other things) the following (the "SBA Term Loan Documents"): a Note in the amount of the SBA Term Loan and dated December 18, 2009, a Business Loan Agreement dated December 18, 2009, a Commercial Security Agreement dated December 18, 2009, a Loan Agreement dated December 18, 2009, a Debtor's Certificate dated December 18, 2009, an Assignment of Life Insurance Policy as Collateral dated December 14, 2009, various other documents, certificates and agreements respecting the SBA Term Loan, certain related documents executed and delivered in connection therewith, and certain documents associated with all extensions, renewals, modifications and amendments of the foregoing. Lender's lien in the collateral securing the SBA Term Loan was perfected by (among other things) the filing of a UCC Financing and Continuation Statements with the California Secretary of State.

D. Concurrently with the execution and delivery of the SBA Term Loan Documents, as part of the same transaction, and for good and valuable consideration, Keith Dorsa, individually and as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated November 15, 2002, and Katherine Dorsa, as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated November 15, 2002, executed and delivered to Lender Unconditional Guaranties, each dated December 18, 2009 (the "SBA Term Loan Guaranties").

E. Debtor filed for bankruptcy protection on August 23, 2010, Northern District of California Bankruptcy Court case no. 10-58737, under Untied Chapter 11 of the United States Bankruptcy Code and is presently operating as debtor in possession.

F. Prior to the date of this Agreement, Debtor was operating under a Cash Collateral Stipulation and related order with Lender (the "Cash Collateral Stipulation and Order").

G. Debtor defaulted on its obligations under the Cash Collateral Stipulation and Order and Lender terminated Debtor's right to use Lender's cash collateral.

H. Debtor has requested that Lender restructure, modify, and amend Debtor's obligations under the Revolving Loan Documents and the SBA Term Loan Documents (as previously modified and amended) and agree to continued use if cash collateral and Lender is willing to do so, in accordance with the terms and conditions specified in this Agreement and the SBA Term Loan Change in Terms Agreement and a Stipulation For Use of Cash Collateral. The Revolving Loan Documents (as previously modified and amended), the SBA Term Loan Documents (as previously modified and amended), a SBA Term Loan Change In Terms Agreement in a form and content acceptable to Lender modifying Debtor's obligations under the SBA Term Loan Documents (the "SBA Term Loan Change in Terms Agreement"), and this Agreement shall be collectively and alternatively referred to as the "Loan Documents" and Debtor's monetary and non-monetary duties and obligations under the Loan Documents shall be collectively and alternatively referred to as the "Obligations."

## AGREEMENT

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Accuracy of Recitals, Effective Date and Definitions.** Debtor acknowledges and agrees that each of the recitals set forth above is true, correct and accurate. Unless otherwise expressly provided by this Agreement, this Agreement and the SBA Term Loan Change in Terms Agreement shall modify and, to the extent inconsistent with, amend the Loan Documents effective upon the last to occur of (i) the date of Lender's full execution of this Agreement or (ii) the satisfaction or waiver by Lender of all conditions precedent set forth herein. Any capitalized term not specifically defined herein shall have the meaning assigned to it in the Loan Documents.

2. **Acknowledgment of Obligations.** As of June 29, 2011, the outstanding amount of principal and accrued and unpaid interest owing under the Revolving Loan Documents was $206,182.73 and the outstanding amount of principal and accrued and unpaid interest owing under the SBA Term Loan Documents was $481,706.63, which sums are hereby acknowledged and admitted by Debtor.

3. **Termination of Advance Rights.** All right, power and authority granted to Debtor under the Loan Documents to obtain additional loans and advances of credit are and remain terminated; provided, however, that the foregoing shall not limit or restrict Lender's right under the Loan Documents or applicable law to make advances, including (without limitation) advances deemed necessary, appropriate or required to protect or preserve the collateral securing the Obligations.

4. **Guarantor and Subordination Reaffirmation.** Keith Dorsa and Katherine Dorsa each hereby acknowledges and agrees that each has read, is familiar with, and consents to all of the terms and conditions contained in this Agreement and the SBA Term Loan Change in Terms Agreement and specifically consents to the financial accommodations extended and to be extended by Lender to Debtor as set forth therein. Keith Dorsa and Katherine Dorsa each hereby confirms, acknowledges, and agrees that (1) all of the recitals contained herein are true, correct and accurate; (2) that all of the terms and provisions of the Revolving Loan Guaranties signed and delivered by Keith Dorsa (individually) and Katherine Dorsa (individually) are each are hereby ratified and confirmed, shall continue in full force and effect with respect to all of the Obligations, and that the Obligations secured by thereby include (without limitation) the Obligations under the Loan Documents, this Agreement and the SBA Term Loan Change in Terms Agreement; and (3) that all of the terms and provisions of the SBA Term Loan Guaranties signed and delivered by Keith Dorsa, individually and as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated November 15, 2002, and Katherine Dorsa,

as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated November 15, 2002, are each hereby ratified and confirmed, shall continue in full force and effect with respect to all of the Obligations, and that the Obligations secured by thereby include (without limitation) the Obligations under the Loan Documents, this Agreement and the SBA Term Loan Change in Terms Agreement. Further, Keith Dorsa hereby confirms, acknowledges, and agrees that that all of the terms and provisions of the Subordination Agreement signed and delivered by Keith Dorsa are each hereby ratified and confirmed, shall continue in full force and effect with respect to all of the Obligations, and that the Obligations to which the debts owing to Keith Dorsa are subordinated include (without limitation) the Obligations under the Loan Documents, this Agreement and the SBA Term Loan Change in Terms Agreement.

5. **Modification and Amendment to Loan Documents and Obligations.** Notwithstanding anything to the contrary contained in the Loan Documents, the Loan Documents shall be modified and, to the extent inconsistent with the Loan Documents, amended as follows:

    a. <u>Closing Payment</u>. Upon the Bankruptcy Court's approval of this Agreement, the SBA Term Loan Change in Terms Agreement, and a Stipulation For Use of Cash Collateral, Debtor shall pay to Lender the sum of $75,000. Such payment shall be applied (i) first, to bring current interest owing under the SBA Term Loan, (ii) second, to bring current interest owing under the Revolving Loan, and (iii) third, to a reduction in the principal balance of the Revolving Loan.

    b. <u>Subsequent Principal Payment</u>. Not later than five calendar days of the Bankruptcy Court's approval of this Agreement and the SBA Term Loan Change in Terms Agreement and a Stipulation For Use of Cash Collateral, Debtor will make an additional payment of $34,820 by way of an Automatic Charge as described in Paragraph 7 hereinafter, which sum shall be applied to principal obligations owing under the Revolving Loan. Once this Agreement and the SBA Term Loan Change in Terms Agreement are approved by the Bankruptcy Court, and the Closing Payment and the Subsequent Principal Payment outlined in Section 5.a and in this Section 5.b are made, the balance of the Revolving Loan will be approximately $100,000.

    c. <u>Amortized Repayment of Revolving Loan</u>. Once this Agreement and the SBA Term Loan Change in Terms Agreement are approved by the Bankruptcy Court, and the Closing Payment and the Subsequent Principal Payment outlined in Sections 5.a and 5.b above are made, Lender agrees to amortize the sum of $50,000 under the Revolving Loan over the remaining term of the SBA Term Loan (which amortization will be at an interest of 5.5% and Debtor shall thereafter make monthly payments to Lender in the amount of $615.00 per month commencing on July 22, 2011 through December 22, 2019 by way of an Automatic Charge as described in paragraph 7 hereinafter . If and only if Debtor timely pays off and satisfies the $50,000 sum set forth herein by making the amortizing payments specified in this Section over the remaining term of the SBA Term Loan, then Lender agrees to accept such payments in full

satisfaction of the Revolving Loan Obligations. If Debtor fails to timely pay off and satisfy the $50,000 sum set forth herein by making the amortizing payments specified in this Section over the remaining term of the SBA Term Loan, then Lender shall apply the principal amount of the payments actually received by Lender under this Section against the approximately $100,000 balance of the obligations owing under the Revolving Loan, and the remaining balance of the obligations owing under the Revolving Loan shall continue to be due and owing in full.

   d. <u>Re-amortization of SBA Term Loan</u>. Once this Agreement and the SBA Term Loan Change in Terms Agreement are approved by the Bankruptcy Court, and the Closing Payment and the Subsequent Principal Payment outlined in Sections 5.a and 5.b above are made, Lender agrees to re-amortize the then present balance of the SBA Term Loan over the remaining term of such SBA Term Loan (which amortization shall be at the same non-default rate specified in the SBA Term Loan Documents and shall be as more fully set forth in the SBA Term Loan Change in Terms Agreement), and Debtor shall thereafter continue to pay interest only of $2,025.00 per month commencing on July 5, 2011 and through December 5, 2011 and then commencing January 5, 2012 principal and interest of $6,122 per month through December 30, 2019 by way of an Automatic Charge as described in Paragraph 7 hereinafter .

   e. <u>No Express or Implied Covenant to Further Forbear</u>. Debtor acknowledges that it has been informed by Lender that no further agreements, extensions, renewals, or re-financings will be granted by Lender with respect to the Obligations, except at Lender's sole discretion.

6. **Continued SBA Term Loan Payments.** Subject to the provisions of this Agreement and the SBA Term Loan Change in Terms Agreement, Debtor shall continue to pay the obligations under the SBA Term Loan in the time and manner specified therein and such documents shall continue in full force and effect.

7. **Automatic Charge**. Debtor hereby consents to, approves of and otherwise authorizes Lender to automatically charge its deposit or other accounts with Lender (including, without limitation, any so-called debtor in possession accounts with Lender) for any payments of principal, interest, expense or other amounts due and owing under the Loan Documents.

8. **Lender's Forbearance.** Provided Debtor fully and timely pays and performs its obligations under this Agreement and under the SBA Term Loan Change in Terms Agreement and does not further default under any of the Loan Documents, Lender agrees to refrain from exercising any of its rights and remedies under any of the Loan Documents; provided, however, that nothing contained herein shall be deemed a waiver of such rights and/or remedies.

9. **Continued Use of Cash Collateral.** Provided Debtor fully and timely pays and performs its obligations under this Agreement and under the SBA Term Loan Change in Terms

Agreement, Lender agrees to Debtor's continued use of cash collateral in accordance with the Stipulation For Use of Cash Collateral of even date herewith and will execute, directly or through counsel, such a Stipulation For Use of Cash Collateral which, in summary, provides (in part) that Debtor shall have the right to continued use of cash collateral pursuant to Bankruptcy Code Section 363 (c)(2), so long as the Debtor fully and timely pays Lender the payments described in paragraph 5 a-d herein and fully and timely performs the other obligations under the Stipulation For Use of Cash Collateral.

10. **Execution and Delivery of Additional Documents.** The close of this transaction shall be evidenced by the execution and exchange of this Agreement and the Change In Terms Agreement and by the approval of the United States Bankruptcy court of the terms and conditions for this Agreement and such SBA Term Loan Change in Terms Agreement.

11. **Waivers.** Debtor, Keith Dorsa, and Katherine Dorsa hereby generally waive and release any and all claims, defenses, and offsets of any nature whatsoever, known or unknown, suspected or unsuspected, which Debtor, Keith Dorsa, or Katherine Dorsa might now have against Lender, including but not limited to claims, defenses, and offsets arising from or in any way related to the Loan Documents or the acts, omissions or actions of Lender in connection with the administration, enforcement and/or collection of the Obligations except as to the obligations set forth in this Agreement. Lender, without waiving its rights under the Loan Documents, related loan guarantees, or this Agreement, hereby generally waives and releases any and all claims, defenses, and offsets of any nature whatsoever, known or unknown, suspected or unsuspected, which Lender might now have against Debtor, Keith Dorsa, or Katherine Dorsa arising from breaches or defaults under the Revolving Loan Documents and/or the SBA Term Loan Documents (as previously modified and amended) and any related guaranties by Debtor, Keith Dorsa, or Katherine Dorsa prior to the date of this Agreement.

Debtor, Keith Dorsa, and Katherine Dorsa are aware of the provisions of Section 1542 of the Civil Code of the State of California and each expressly waives and relinquishes all rights and benefits which they have or may have had under said section, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

In furtherance of the release set forth herein, Debtor, Keith Dorsa, and Katherine Dorsa acknowledge that they may hereafter discover facts different from or in addition to those they now know or believe to be true with respect to the matters herein released. Notwithstanding any such different or additional facts, each agrees that this Agreement and the release contained herein shall be and remain in effect in all respects as a complete and general release.

12. **Independent Legal Advice.** In executing this Agreement and the SBA Term Loan Change in Terms Agreement, Debtor warrants, represents and agrees that (i) Debtor and each guarantor executes and delivers this Agreement and the SBA Term Loan Change in Terms Agreement with full knowledge of the rights which Debtor may have in respect to the Lender, (ii) Lender has advised Debtor and each guarantor that (a) they may have conflicts of interest among themselves, (b) they may have interests adverse to that of Lender, and (c) each of them have a right to be represented by independent counsel of their own choosing, and (iii) Debtor and each guarantor has received (or has been given the opportunity to seek and obtain and has knowingly failed to do so) independent legal advice with respect to this Agreement and the SBA Term Loan Change in Terms Agreement and any documents to be executed and delivered in connection with this Agreement and the SBA Term Loan Change in Terms Agreement, with respect to each such party's rights and asserted rights arising out of said matters, and with respect to any waivers and releases contained in this Agreement and any documents to be executed and delivered in connection with this Agreement and the SBA Term Loan Change in Terms Agreement.

13. **General Covenants.** In addition to Debtor's other obligations under the Loan Documents, Debtor will do and perform the following:

    a. Debtor will continue to provide Lender with copies of all reports required under the Cash Collateral Stipulation and Order.

    b. Debtor will, from time to time, provide Lender with such additional financial and other information as Lender may request.

15. **Conditions Precedent.** Lender's duties to enter into this Agreement and the SBA Term Loan Change in Terms Agreement and to forbear in the exercise of rights and remedies hereunder shall be subject to the execution and exchange of the Closing Documents and such other documents as Lender may request, the approval of the SBA Term Loan Change in Terms Agreement by the United States Small Business Association, and the approval of the United States Bankruptcy Court of the terms and conditions for this Agreement and such SBA Term Loan Change in Terms Agreement and a Stipulation For Use Of Cash Collateral.

16. **No Presumption.** This Agreement, the SBA Term Loan Change in Terms Agreement and all agreements relating to the subject matter hereof are the product of joint negotiation by the parties and their respective attorneys. The parties hereto agree that neither this Agreement nor the SBA Term Loan Change in Terms Agreement shall not be subject to any presumption, construction or implication favoring the position of Lender, Debtor or any guarantor. The parties waive the provisions of California Civil Code Section 1654 requiring that any ambiguities in this Agreement or the SBA Term Loan Change in Terms Agreement be construed against either of the parties. The parties agree that any deletion of language from this Agreement or the SBA Term Loan Change in Terms Agreement prior to its full execution shall not be construed to have any particular meaning or to raise any presumption, construction

or implication, including, without limitation, any implication that the parties intended thereby to state the opposite of the deleted language.

17. **Further Assurances.** The parties hereby agree, to the extent permitted by law, from time to time, as and when requested by any other party hereto or by its successors or assigns, to execute and deliver, or cause to be executed and delivered, all such instruments, and to take, or cause to be taken, all such further or other actions as may be reasonably necessary or desirable in order to implement the provisions hereof and otherwise to effect the intent and purposes hereof.

18. **Further Modifications.** Subject to the provisions of this Agreement and/or the SBA Term Loan Change in Terms Agreement relating to further assurances, neither this Agreement nor the SBA Term Loan Change in Terms Agreement create any right in favor of Debtor nor any duty or obligation on the part of Lender to enter in to any further modifications or amendments to any of the Loan Documents or to provide any other or additional credit facilities to Debtor.

19. **Counterparts.** This Agreement and the SBA Term Loan Change in Terms Agreement may be executed in counterparts, each of which, when so executed, shall be deemed to be an original, and such counterparts together shall constitute one in the same instrument. For purposes of this Agreement and the SBA Term Loan Change in Terms Agreement, a facsimile execution shall be considered as the equivalent of a wet ink signature and shall be deemed good and valid acceptance of this Agreement and the SBA Term Loan Change in Terms Agreement and shall be deemed to have been reasonably relied on by all other parties; provided, however, that any signature forwarded by facsimile shall be promptly followed by a wet ink original, but the failure to forward a wet ink original shall not void or otherwise effect the acceptance evidenced by the facsimile execution.

20. **Entire Agreement; Modification; Waiver.** This Agreement, the SBA Term Loan Change in Terms Agreement and the Loan Documents constitute the entire agreement between the parties pertaining to the subject matter contained in this Agreement and supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No failure or delay in exercising any right or remedy available to any party shall be deemed a waiver of same, unless such waiver is set forth in writing and signed by the party to be charged with such waiver. No supplement, modification, or amendment hereof shall be binding unless executed in writing by all the parties. No waiver of any of the provisions hereof shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

21. **General.** Time is of the essence herein. The captions and headings appearing herein are for the purpose of identification only and such captions and headings shall not be construed to convey any substance or meaning to the text hereof. To the extent that the signatories

hereto shall comprise a group of individuals, the obligations and liabilities of such individuals hereunder shall be joint and several. If for any reason any provision hereof is determined to be invalid or unenforceable, the remaining provisions nevertheless shall be construed, performed and enforced as if the invalidated or unenforceable provision had not been included. The provisions hereof shall be binding on and shall inure to the benefit of the parties hereto, their respective heirs, legal representatives, successors, and assignees, provided that no benefit shall inure to assignees acquiring any interest in violation of the provisions hereof.

22. **Continued Full Force and Effect.** Except as amended hereby, the Loan Documents shall continue in full force and effect, Lender shall retain all pledges, hypothecations and other grants of security in any collateral securing the Obligations, all without impairment or modification in and to priority, and all guaranties and subordination agreements respecting the Loan Documents shall continue in full force and effect.

IN WITNESS WHEREOF, the Debtor has executed this Agreement as of the date first above written.

DEBTOR:

HSR ENGINEERING CONTRACTORS, INC.,
a California corporation and sometimes
doing business as HSR, Inc.

By: *Michael Mea*
Its: *Responsible Individual*

_____
ROSS KEITH DORSA, individually and as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated ~~November 15, 2002~~ *April 4, 2005*

*Katherine Dorsa*
KATHERINE DORSA, individually and as trustee of the Ross Keith Dorsa and the Katherine Dorsa Family Trust dated ~~November 15, 2002~~ *April 4, 2005*

IN WITNESS WHEREOF, Lender hereby accepts this Agreement to be effective as of the date set forth below.

Date: _____

"LENDER"

HERITAGE BANK OF COMMERCE

By: _____
Its: _____